CHICAGO & N. W. RY. CO. v. DAVIS.

(Circuit Court of Appeals Eighth Circuit. October 17, 1892.)

No. 84.

MASTER AND SERVANT — DEATH BY WRONGFUL ACT — CONTRIBUTORY NEGLIGENCE.

A section man on a railway, who releases his hold on a hand car, descends therefrom, stands upon the track on a down grade, in front of a dump car, by chance detached from the hand car, and closely following it at the rate of from three to four miles an hour, and is killed thereby, is guilty of such contributory negligence as to bar a recovery for his death.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

Action by A. T. Davis, administrator of the estate of Olaf Hoedling, deceased, against the Chicago & Northwestern Railway Company, for death by wrongful act. Verdict and judgment for plaintiff. Defendant brings error. Reversed.

Frank F. Dawley and J. C. Cook, (W. C. Goudy and N. M. Hubbard, on the brief,) for plaintiff in error.

Crom. Bowen, (J. R. Barcroft and O. M. Brockett, on the brief,) for defendant in error.

Before BREWER, Circuit Justice, and CALDWELL and SANBORN, Circuit Judges.

SANBORN, Circuit Judge. The defendant in error, who was the plaintiff below, brought this action for the negligent killing of the deceased by the defendant railway company. The company, in its answer, denied negligence on its part, and alleged that the negligence of the deceased caused his death. The testimony was undisputed, and established the following facts:

On July 11, 1888, the deceased was working as a section man for the defendant. He had been in its service in that capacity about two weeks, and on this day was one of a section gang of six men who were engaged in transporting railroad ties by means of a hand car and dump car along the line of the railroad to the point where they were to be used to repair it. Three of these men stood upon the forward end of the hand car, and three upon the rear end. The deceased was the middle one of the three standing upon the rear of the car. Dump cars ordinarily have no brake, and no means of fastening them to a hand car, and this one had none. In the forenoon of this day these men loaded 22 or 23 new cedar ties lengthwise upon the dump car, and hauled them about a mile and a half over a hilly road, when they unloaded them, removed the cars from the track, ate their dinner, then reloaded the dump car, and again proceeded on their way. In the morning, when the dump car was loaded, the section boss struck a pick into one of the ties near its forward end, so that its handle projected forward, and directed some one to take hold of the pick. The hand car was placed in front of the loaded dump car, and the deceased, standing on the rear end of the hand car, grasped its handle with his right hand to hold himself in position, and took hold of the handle of the pick with his left hand, to control the speed of the dump car, and keep it at a proper distance from the hand car. They passed some rising grades in the forenoon, and there they got off and pushed the dump car, because the propelling power of the hand car was not sufficient to haul it. After reloading the car in the afternoon, they proceeded in the same way, the deceased still grasping the handle of the hand car and the pick handle, until, as they were passing down a descending grade, one or two of the ties and the pick fell off. When the ties fell, the boss applied the brake to the hand car, which diminished its speed, but he immediately saw that no more ties would fall, and released the brake. When he applied the brake, the dump car came up against the hand car so that the men standing on it felt it "a little bit," but neither the deceased nor any of the men on the car lost their balance on this account, or had any difficulty in keeping their places. When the brake was released, the hand car, which was moving about three or four miles an hour,—so slowly that the men could easily step from it to the ground without falling,—separated from 2 to 8 feet from the dump car. When the

hand car had moved about 150 feet from the place where the ties and pick fell off, the deceased released his hold on the handle of the hand car, and went down between that and the dump car, where he was run over and killed by the latter. When the brake was let off, he had his right hand on the handle of the hand car, and as he released his hold and went down upon the roadbed he did not call out, or reach out his hand to grasp anything or any one, nor did he lose his balance or fall, but stood still, as if he had stepped down, or walked a step or two towards the dump car, until it struck him, and threw him under it.

At the close of the testimony the defendant requested the court to instruct the jury to return a verdict in its favor, but this was refused, and this refusal is one of the errors assigned. There was a verdict and judgment for plaintiff.

In providing his employes with a reasonably safe place in which to work, in supplying them with reasonably safe machinery and appliances with which to perform the service assigned to them, in the employment of competent men, and in the general conduct of his business, it is the duty of the employer to use that degree of care, commensurate with the character of his various operations, which an ordinarily prudent person would exercise under like circumstances in order to protect his employes from injury; and for any injury caused by his failure so to do he is liable in damages, provided the injured employe does not by his own negligence contribute to such injury. It is likewise the duty of the employe to exercise that degree of care, commensurate with the character of his occupation, which an ordinarily prudent person would employ under like circumstances in order to protect himself from injury, and, if he fails to exercise this care, he cannot recover for any injury to which his own negligence has contributed, even though his employer has failed to exercise due care. Where the injury results from the concurrent negligence of the employer and employe, the latter cannot maintain an action for damages resulting from it, because it is impracticable in the administration of justice to divide and apportion the compensation in proportion to the varying degrees of concurring negligence. If he voluntarily and unnecessarily places himself in a position that he knows is dangerous, or that an ordinarily prudent man in his position would know was dangerous, and is thereby injured, when there are other positions that he might take in the discharge of his duty that are safe, he cannot recover of the defendant, although the latter is in some degree negligent. He cannot recklessly and unnecessarily expose himself to a known danger, and then recover for an injury to which such exposure contributed. Cunningham v. Railroad Co., 17 Fed. Rep. 882, 886; Bunt v. Mining Co., 138 U. S. 483, 485, 11 Sup. Ct. Rep. 461; Railroad Co. v. Jones, 95 U. S. 439, 443; Kane v. Railway Co., 128 U. S. 91, 94, 9 Sup. Ct. Rep. 16; Goodlett v. Railroad, 122 U. S. 391, 411, 7 Sup. Ct. Rep. 1254; Kresanowski v. Railroad Co., 18 Fed. Rep. 229, 234, 235; Railroad Co. v. Nickels, (8th Circuit,) 4 U. S. App. 369, 1 C. C. A. 625, 50 Fed. Rep. 723.

Under the statute upon which this action is based, the administrator can maintain it only in case the deceased could have recovered damages for his injury if he had survived. The first question there-

fore is, did the negligence of the deceased cause or contribute to the accident and death?

The proximate cause of the death was that the deceased released his grasp upon the handle of the hand car, went down upon the road-bed between the cars, and there stood still, or walked towards the approaching dump car, until it struck him. These acts were not necessary to the proper performance of his duties. They did not tend to assist him in the proper discharge of those duties, but tended to prevent their proper discharge. The danger of releasing his hold and placing himself on the roadbed in front of the descending loaded car was plain and palpable. No man of ordinary prudence could fail to . apprehend it. The deceased must have seen and known it. He was 48 years old. He had been in this country 10 years. He had worked for this railroad company four or five weeks on a gravel train, and two weeks immediately preceding the accident on this section where he was killed. He knew that these cars were running at a down grade at the rate of three or four miles an hour, and that his safety in standing on the moving hand car depended upon his holding fast to its handle. He knew the effect of gravitation,—that heavy bodies, when unsupported, will fall; that cars as well as water will run down hill; and that the momentum of a loaded car descending a grade at the rate of four miles an hour will carry with it or crush under it a single man who places himself in its way. No man of ordinary prudence would have so unnecessarily exposed himself to this plain danger. No man in the exercise of reasonable care would have released his hold upon the handle of the hand car, so that he might, by any sudden change of speed, be toppled off the car. No ordinarily prudent man would have placed himself on the roadbed in front of the advancing dump car. As well might a brakeman throw himself in front of an advancing locomotive, or a painter, holding to a ladder far up on the side of a lofty building, release his hold, and then seek to recover of his employer for resulting injury.

In Kane v. Railway Co., supra, the supreme court said:

"It is undoubtedly the law that an employe is guilty of contributory negligence, which will defeat his right to recover for injuries sustained in the course of his employment, when such injuries substantially resulted from dangers so obvious and threatening that a reasonably prudent man, under similar circumstances, would have avoided them, if in his power to do so. He will be deemed to have assumed the risks involved in such heedless exposure of himself to danger."

In Cunningham v. Railroad Co., supra, where a yardman in the discharge of his duties unnecessarily jumped upon a defective footboard on the rear of an approaching engine, whose hand railing was broken off, so that he fell under the engine and was killed, Justice Miller, in charging the jury, thus laid down this rule of law:

"A man has no right, because a fire is built in his neighborhood, to put his finger or his clothes in it, and burn them, then say, 'I may sue and recover damages.' A man has no right to thrust himself forward into a dangerous position, and say, 'If I am killed, somebody will get damages for it;' or, 'If I am hurt, I shall go to the hospital, and be taken care of, and recover damages.' He has got to take care of himself, as well as the railroad has to take care of their duties and their employes. These obligations are mutual; and it is the law, and it is your duty to require it as law, that, if a man voluntarily put himself into a dangerous

position,—does so unnecessarily, when there are other positions in connection with the discharge of his duty which are safe which he can be placed in,—he cannot recover of the railroad company damages for that injury to which he has contributed by his own negligence. That is the law. "

When the jury in that case, through some mistake, returned a verdict for the plaintiff, he immediately set it aside with the remark that it was not only a case of clear negligence on the part of the deceased, but a case of stupid negligence on his part. The similarity of the negligent acts of the deceased in that case and in the case we are now considering is striking, and the applicability of this rule of law to the facts of this case is obvious. The deceased was stationed in a safe position for the discharge of his duty,—a position where he would not have been injured had he retained it. He carelessly left it, and unnecessarily exposed himself to a perfectly obvious danger. This careless exposure was the proximate cause of his death. An ordinarily prudent man would not have so exposed himself, and would not have been injured. The other five members of his gang did not, and they were not injured; and the court below should have instructed the jury to return a verdict for the defendant.

The views we have already expressed render it unnecessary to consider the other errors assigned. The judgment below is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

BREWER, Circuit Justice. I concur in the judgment of reversal on the ground that, whatever of risk there was in the position occupied and the work done by the deceased at the time of the accident causing his death, was obvious, and therefore assumed by him. No special skill or knowledge was necessary to perceive the full danger. Every man must be presumed to know the effect of applying a brake to a wagon or car descending a grade, and to take such precautions against injury therefrom as he deems sufficient. So, whether the deceased got off the hand car voluntarily or involuntarily is immaterial. If the former, he chose to put himself in a place of danger; if the latter, it was because he failed to take suitable precautions against that checking of the hand car by the brake which he knew was likely to happen at any time, and the effect of which he must also be presumed to have known.