## MORRIS v. DULUTH, S. S. & A. RY. CO.

(Circuit Court of Appeals. Eighth Circuit.    April 24, 1901.)

No. 1,496.

1. RAILWAY COMPANIES MAY USE REASONABLE DISCRETION IN CONSTRUCTION.
   Railway companies have the right to exercise reasonable judgment and discretion in the construction of their roadbeds, rails, and safety appliances.

2. NEGLIGENCE—UNUSUAL BUT REASONABLE SIZE OF BLOCKING NO EVIDENCE OF.
   A railway company used a piece of lumber one inch thicker, six inches wider, and one foot longer than the customary blocking to fill the space between a guard rail and a main rail. *Held*, the use of this blocking of unusual size was but the rightful exercise of the judgment of the company, and was no evidence of negligence, or of liability for an injury resulting from a brakeman's stumbling over it.

3. CONTRIBUTORY NEGLIGENCE—CHOOSING THE MORE DANGEROUS OF TWO METHODS OF DISCHARGING A DUTY IS EVIDENCE OF.
   When there is a comparatively safe and a more dangerous way known to a servant, by means of which he may discharge his duty, it is negligence for him to select the more dangerous method, and he thereby assumes the risk of the injury which its use entails.

4. SAME.
   A railway train was equipped with two levers,—one on each side of it,—to enable the brakemen to draw a pin between two cars without entering between them. The machinery attached to the lever on the side of the plaintiff was out of order, while that attached to the lever on the opposite side was in good condition. *Held*, the fact that the brakeman chose to, and did, step in between the cars while in motion to draw the pin, instead of using the lever on the opposite side of the train, provided for the purpose, was evidence of negligence contributing to an injury resulting from his stumbling while walking between the cars.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

F. D. Larrabee, for plaintiff in error.

M. D. Munn (N. M. Thygeson, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge.    In the early morning of April 6, 1899, while it was yet dark, the plaintiff, John Morris, who was the head brakeman of a crew of employés of the defendant, the Duluth, South Shore & Atlantic Railway Company, stepped in between two cars which were moving along a side track at the rate of four miles an hour, and walked along with them, for the purpose of uncoupling them, until he stubbed his toes against the blocking of a guard rail, fell, and was so injured that he lost one of his legs.    He sued the railway company for negligence in the construction of the blocking over which he stumbled.    The company denied that it was negligent, and alleged that his accident was caused by his own carelessness.    There was a trial, and at its close the court instructed the jury to return a verdict for the defendant.    This ruling is assigned as error.    The assignment presents two questions:    Was there any substantial evidence that the defendant was guilty of negligence which caused the injury?    And was the plaintiff guilty of any negligence which con-

tributed to it? These questions will be considered in the order in which they have been stated.

The facts disclosed by the evidence which condition the answer to the first question are these: Guard rails on the defendant's railroad were ordinarily slightly curved in form, and were placed about 3 inches distant from the main rail at their nearest points, and 5 or 6 inches distant from these rails at their ends. They were usually 10 or 12 feet long. The ends of the guard rail over whose blocking the plaintiff fell were about 12 inches distant from the main rail. The statutes of the state of Michigan, where this accident happened, required the spaces between the guard rails and the main rails to be blocked, for the purpose of preventing the employés from catching their feet between them; and it is not claimed that the railway company was guilty of any negligence because it used this guard rail, or because it blocked the spaces between the guard rail and the main rail. The contention is that it was negligent because it blocked the space between these rails too much. The customary method of filling the space between such rails on the defendant's railroad was to drive a piece of plank, in the form of a wedge, and two inches thick, between the two rails and between the bases and the balls of the rails, so that the narrow end of the wedge would stop near the middle, while the wide end would rest even with the end of the guard rail. The space over which the plaintiff fell was blocked with a piece of car decking 3 inches thick, which projected 1 foot beyond the end of the guard rail, was 1 foot in width, and was not beveled at its wider end. The best blocking completely fills the space between the bases and the balls of the rails, and leaves no more than 1 inch between the top of the rails and the top of the blocking. The block used in this case completely filled this requirement. In thickness it was the best that could have been provided. It completely filled the space between the bases and the balls of the rails, and the top of it rested about an inch below the tops of the rails. The plaintiff was an old employé of the railway company. He knew that the guard rail was in its place upon the roadbed, but was not aware of the height, length, or width of the blocking which filled the space between it and the main rail. In this state of the facts, it is difficult to perceive how any negligence was chargeable to the railway company. It may be conceded that this company would have been liable for any negligence of which it was guilty in placing unnecessary obstructions upon its track, but the guard rail was not an unnecessary obstruction, and there is nothing in the case to show that the blocking caused any injury which the rail itself would not inevitably have produced. It was 1 inch lower than the ball of the guard rail, and it was no wider than the distance between the main rail and the end of the guard rail. Railway companies necessarily have, and they must exercise, judgment and discretion in the construction of their railroads, and the location and character of the appliances which they use to secure the safety of the operation of their trains; and the fact that the ends of the guard rail were placed in this instance 12 inches, instead of 6 inches, from the main rail, was evidence of nothing but the rightful exercise by the defendant of this judgment and

discretion. It was no proof of any negligence on the part of the company. When the defendant fell, he was walking along the road-bed. He did not come upon the side, but upon the end, of the blocking. If he stubbed his toes and fell over this end of the block when it extended 1 foot beyond the end of the rail, he would inevitably have stubbed his toes and have fallen over it if it had been a foot shorter; and, if there had been no blocking, he would as inevitably have fallen over the guard rail, which was an inch higher than the blocking. So, also, if he stubbed his toes and fell over the blocking, which was one foot wider and 1 inch lower than the guard rail, he must inevitably have fallen over the guard rail, whose ends were rightfully placed 12 inches from the main rail, if there had been no blocking or a lower blocking between the rails. The conclusion is that there was no substantial evidence in this case that the defendant was guilty of any negligence which caused or contributed to the injury of the plaintiff, and the instruction and the judgment of the court were right.

An examination of the second question raised by the specification of error leads to the same conclusion. The plaintiff was the head brakeman of his crew. That crew was engaged in placing the rear one of two cars which were attached to an engine upon a side track. The plaintiff had turned the switch to permit this train to back in upon the side track. His subordinate brakeman was riding the train, and it was necessary to uncouple the rear car, so that it could be left upon the side track. There were two levers, one on each side of this train, provided by the company for the purpose of enabling the brakeman to pull the pin between these two cars and to uncouple them without incurring the risk and danger of stepping between them for that purpose. The machinery attached to the lever on the plaintiff's side of the train was out of order, so that he could not pull the pin by means of that lever. But the machinery attached to the lever on the opposite side of the train was in working condition, and he could have drawn the pin himself, or could have caused his subordinate to draw it by the use of this lever. Notwithstanding this fact, he stepped in between the two cars in the dark, while they were moving about four miles an hour, undertook to pull the pin with his hands, and by this indiscretion induced his injury. When there is a comparatively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is negligence for him to select the more dangerous method, and he thereby assumes the risk of the injury which its use entails. Gowen v. Harley, 56 Fed. 973, 983, 6 C. C. A. 190, 200, 12 U. S. App. 574, 590; Coal Co. v. Reid, 85 Fed. 914, 29 C. C. A. 475, 57 U. S. App. 464; McCain v. Railroad Co., 76 Fed. 125, 126, 22 C. C. A. 99, 101, 40 U. S. App. 181, 184; Russell v. Tillotson, 140 Mass. 201, 4 N. E. 231; Gleason v. Railway Co., 73 Fed. 647, 19 C. C. A. 636, 43 U. S. App. 89; Cunningham v. Railway Co. (C. C.) 17 Fed. 882; English v. Railway Co. (C. C.) 24 Fed. 906. The plaintiff knew that he could draw the pin and uncouple these cars in safety by the use of the lever on the opposite side of his train, but he chose to incur the risk and danger of walking between the moving cars and of attempting to draw the pin with his hands. The

lever and the machinery connected with it had been provided by the defendant for the express purpose of enabling the plaintiff to avoid the danger and risk to which he elected to expose himself. His election to adopt this dangerous method of raising the pin directly contributed to his injury. If he had used the appliances provided by his employer to enable him to avoid this danger, he would not have been harmed. His injury was the direct result of his own negligence. The judgment below is affirmed.