KILPATRICK et al. v. CHOCTAW, O. & G. R. CO.

(Circuit Court of Appeals, Eighth Circuit.  February 21, 1903.)

No. 1,694.

1 Injuries to Servant—Defective Appliances — Unblocked Railroad Frogs.

It is not negligence to use unblocked frogs in a railroad freightyard, whereby the feet of employés coupling cars are liable to be caught, it appearing that unblocked frogs are generally in use in the same section of the country, and that it is doubtful whether they are not the better kind.

Caldwell, Circuit Judge, dissenting.

In Error to the United States Court of Appeals in the Indian Territory.

W. E. Rogers, W. O. Davis, and J. H. Garnett, for plaintiffs in error.

C. B. Stuart, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge.  This is an action for personal injuries which resulted in the death of R. E. Kilpatrick, at Shawnee, in the Territory of Oklahoma, on February 13, 1897.  Minnie Kilpatrick, the plaintiff below and the plaintiff in error here, who was the wife of the deceased, sues for herself and as next friend for her minor children, Ethel Kilpatrick and Robbie Kilpatrick, basing her right to sue on sections 435 and 436 of the Laws of Oklahoma Territory, which provide, in substance, that, when the death of a person is caused by the wrongful act or omission of another the personal representatives of the deceased may maintain an action therefor against the wrongdoer if the deceased might have maintained an action had he lived; and that such action may also be brought by the widow, or, where there is no widow, by the next of kin, provided no personal representative has been appointed.  It was charged in the complaint

¶ 1. Duty of railroad companies to block switches, see note to Hauss v. Railroad Co., 46 C. C. A. 98.

See Master and Servant, vol. 34, Cent. Dig. § 190.

that R. E. Kilpatrick was in the employ of the Choctaw, Oklahoma & Gulf Railroad Company at the time of his death, acting in the capacity of a brakeman on one of its freight trains; that at the time and place of his death it became necessary for the deceased to go between two freight cars standing on the defendant's track, and to uncouple them while the train to which they were attached was moving slowly; that, by reason of the negligence of the defendant company, the coupling pins, coupling links, coupling chains, cranks, and means provided for coupling and uncoupling the two cars, had, through the defendant's negligence, been permitted to become defective, broken, and out of repair, so that the cars could not be uncoupled without going between the cars while they were in motion; that as he stepped in between the two cars for the purpose of uncoupling them, being at the time in the exercise of due care, his foot was caught and became wedged between what is known as the "guard rail" and the "main rail" at a point where the space between the main rail and the guard rail was only about two inches in width; and that, by reason of his foot being caught and so held, he was run over, and his leg and body were so crushed and mangled that he died within half an hour thereafter. It was further alleged in the complaint that the defendant company had caused a guard rail at the place in question to be so laid, alongside of the main rail, that there existed at each end of the guard rail an open and unblocked space about four inches in width; that this space gradually decreased in width from each end of the guard rail for about six inches until it reached a point where the space between the main rail and guard rail was not over two inches wide; that the laying of the guard rail in this manner, without blocking it, rendered the track at that point unsafe and dangerous, as the defendant company knew, or by the exercise of ordinary care ought to have known, long prior to the accident in question; and that for years prior to the accident, as the defendant company well knew, there was in use a plain and simple device for preventing the feet of railroad employés from becoming wedged between the two rails, such device being a block or wedge of wood placed between the guard rail and the main rail at each end of the guard rail, which wedge or block, when inserted, will effectually prevent a person's foot from becoming wedged between the two rails; but that, notwithstanding such knowledge on the part of the defendant company, it negligently failed and omitted to make use of such a device or insert such a block. While the complaint alleged that the coupling appliances on one of the cars in question were broken and out of repair, yet in the course of the trial it was stipulated by the plaintiff's attorneys that the failure to block the frog in the defendant's track was the proximate cause of the injury complained of, and that the plaintiff would rely for a recovery solely upon the failure of the defendant company to block the frog, and that he would not rely for a recovery upon the other ground stated in the complaint, that the coupling appliances were out of repair. At the conclusion of all of the testimony, the trial court directed the jury to return a verdict in favor of the defendant company, which was accordingly done, and the judgment subsequently rendered in

favor of the defendant was affirmed on appeal by the United States Court of Appeals for the Indian Territory. 64 S. W. 560.

The case appears to have been decided, both at nisi prius and on appeal by the United States Court of Appeals in the Indian Territory, upon the ground that it was ruled by the decision of the Supreme Court in Southern Pacific Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391; and in that view we feel constrained to concur. In the Seley Case the Supreme Court, after describing the method which is sometimes employed of blocking the frogs of switches by filling the angle between the guard rail and main rail with a piece of wood or iron, referred to the fact that the evidence in that case plainly showed that on other great railroad systems in the West the unblocked frog was generally used, and that there was evidence tending to show that the unblocked frog is the better form, as the blocked frog is liable to become broken and cause the derailment of trains. It thereupon held that the following instruction contained a correct declaration of law applicable to the case, and should have been given:

"The jury are instructed that if they find from the evidence that the railroad companies used both the blocked and the unblocked frog, and that it is questionable which is the safest or most suitable for the business of the railroads, then the use of the unblocked frog is not negligence, and the jury are instructed not to impute the same as negligence to the defendant, and they should find for the defendant."

The court then referred to several cases (especially Randall v. Baltimore & Ohio Railroad, 109 U. S. 478, 482, 3 Sup. Ct. 322, 27 L. Ed. 1003, and Washington & Georgetown Railroad v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235) in which it had been held substantially that neither railroad corporations nor employers generally are bound to supply "the best and safest or newest" of appliances, but are justified in using such appliances and devices as are in common use, and are considered ordinarily safe and reasonably well adapted to the purposes to which they are applied, and concluded, in view of such decisions and the evidence in the case showing that unblocked frogs were in use on many railroads throughout the country, that it was "plain that the defendant was entitled, not merely to the instruction" aforesaid, "but that, upon the whole evidence, the prayer for a peremptory instruction in the defendant's favor ought to have been granted." This decision, therefore, as we construe it, clearly decides that so long as many railroads of the country use the unblocked frogs, believing such frogs to be ordinarily safe, and less liable to get out of order and occasion derailments than blocked frogs, negligence cannot be imputed to a railroad company simply because it uses unblocked frogs. According to the doctrine so enunciated, it seems that railroad companies are at liberty to determine for themselves, in the light of their experience, which form of frog is preferable, so long as both forms are in common use, and that it is not competent for a jury to hold a railroad company guilty of negligence because it adopts one form of frog in preference to another.

Applying the doctrine enunciated in that case to the case in hand, the judgment below must be permitted to stand, since it is shown

by the testimony, without substantial contradiction, that only about 25 per cent. of the railroads in the United States have adopted the practice of blocking their frogs, while the remaining roads, believing it to be the better or safer practice, leave their frogs unblocked. Counsel for the plaintiffs in error urge with great force that the question whether an unblocked frog is a dangerous contrivance, and more liable to occasion loss of life and limbs than blocked frogs, is in its nature and essence a question of fact to be determined by the testimony of railroad employés, who, in the discharge of their duties as trainmen, are daily brought in contact with both kinds of appliances, and who thus become familiar with the comparative risks which are encountered by the use of each. They further urge that as this is a question of fact it is within the legitimate province of a jury to determine it, and also within the province of a jury to hold a railroad company accountable for a want of ordinary care amounting to culpable negligence if it fails to block its frogs, provided the triors of the fact are satisfied by the evidence that unblocked frogs are so far dangerous and liable to entrap trainmen that they ought not to be used. We feel constrained to hold, however, that this view has not met with the approval of the Supreme Court, but is expressly overruled in the case above cited, the rule enunciated being, as above stated, that so long as both kinds of frogs are in use on railroads, and many roads prefer those that are unblocked, and it is questionable which is the safest or most suitable appliance for the business of railroads, a jury cannot impute negligence to a company which uses one of these appliances in preference to the other. It results from this authoritative statement of the law that the judgment below must be affirmed, and it is so ordered.

CALDWELL, Circuit Judge (dissenting). In Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 Fed. 298, 300, 37 C. C. A. 499, 48 L. R. A. 68, Judge Taft, speaking for the Court of Appeals of the Sixth Circuit, referring to the Ohio statute which makes it obligatory on railroad companies to block their guard rails and frogs, says:

"The intention of the Legislature of Ohio was to protect the employés of railways from injury from a very frequent source of danger by compelling the railway companies to adopt a well-known safety device."

In Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464, the Supreme Court of the United States said:

"Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that, in all occupations which are attended with great and unusual danger, there must be used all appliances readily attainable, known to science, for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence."

In Union Pacific Railway Co. v. James, 56 Fed. 1001, 1006, 6 C. C. A. 217, this court said:

"We think that it might properly have been left to the jury to determine whether the maintenance of an unblocked frog at the time and place of the accident was an act of culpable negligence. * * *"

In this case the defendant did not itself treat the question as one of law. It did not demur to the complaint, but took issue on the question of fact as to whether its track in this regard was properly constructed, and introduced expert testimony on the subject. All the testimony of men having practical experience is that blocking is necessary. One of the witnesses called by the plaintiff testified as follows:

"I have been braking and switching on railroads for about nine years. * * * I know why the M., K. & T. blocks its rails. Protection to the men is one thing, safety, because that open guard rail is just simply a dead trap a man is liable to step in at any time, because you will catch some cars you can't uncouple. When it is unblocked it is not safe for anybody at all. I would say it is dangerous. When it is blocked it is not dangerous, because then a man can't get his foot in there at all. The L. & N. Railroad is the Louisville & Nashville. That and the Illinois Central block their guard rails. I do not know whether the Rock Island block their guard rails or not. I never was over its road. I am a practical brakeman, working on the local right here, where I handle hundreds and thousands of cars every week, as far as that is concerned. My experience in coupling and uncoupling cars has been large. An unblocked guard rail is dangerous just simply because a man's foot will get right in there walking along uncoupling cars. The ball of the rail will prevent it from coming out. The rail is three inches at the top and at the bottom it is about six, and there is a hollow in there, and whenever your foot gets below that you can't pull it out. If that block is in there his foot can't get caught there. The top of the rail is called the ball, and the bottom is the web, and there is a hollow place between them."

Another witness, Otto Sullivan, testified:

"I know the M., K. & T. Company. It blocks its guard rails. After a guard rail is blocked at both ends, a man's foot cannot go in and get caught. * * * Where the guard rail is not blocked it is a dangerous contrivance. It is dangerous because you can run your foot up in there and cannot get it out. It is held there and stays."

Numerous other witnesses, having large experience as brakemen and switchmen and otherwise in the practical operation of trains, testified to the same facts.

Engineering experts treating the subject theoretically say they are not necessary. The defendant was careful not to call a single brakeman or switchman, whose practical experience and observation would have enabled him to testify to facts instead of theories. The language of the Supreme Court in the Seley Case has reference to the facts disclosed by the record in that case, and does not decide as matter of law that it is not necessary to block guard rails or frogs. In that case the conductor, who was killed, was clearly guilty of contributory negligence, and so the court decided, and whatever it said as to the railroad company not being under any legal obligation to block its frogs was not necessary to the decision of the case, and must be treated as the mere obiter dictum of the judge writing the opinion. Moreover, if the opinion is construed as holding that as matter of law a railroad company is not under obligation to its employés to block its guard rails, it must be held to be overruled by the doctrine of the

later case of Mather v. Rillston, supra. See, as to this case, Western Coal & Mining Co. v. Berberich, 94 Fed. 327, 36 C. C. A. 364.

It is not at all likely that the judges of that court would attempt to determine the question either as engineering experts or from practical experience as brakemen and switchmen. Judges not being qualified to speak either as engineering experts or from actual observation and practical experience, it is difficult to understand upon what principle they can declare that railroad companies are not required, for the protection of their employés, to block their guard rails and frogs, or resort to some equivalent or better device to protect their employés from the known and obvious dangers of open guard rails and frogs.

It is common knowledge that open guard rails and frogs are extremely dangerous to the lives and limbs of railroad employés, and, if the courts are going to take it upon themselves to declare as matter of law either that they should or should not be blocked, then the rule prescribed by the courts should require them to be blocked.

It is an impeachment of the intelligence and skill of railroad engineers and managers to say that they are not capable of devising any means of preventing or lessening the numerous fatal accidents resulting to railroad brakemen and switchmen by the use of open guard rails and frogs, and our reason revolts and our humanity is shocked at the judicial declaration that railroad companies are not required to do anything in that direction, not even so much as to use, in the language of Judge Taft, "a well-known safety device."

It should be left to the jury, upon a consideration of all the evidence, to say whether the railroad company is guilty of culpable negligence in neglecting to provide, in the language of the Supreme Court, "such readily attainable appliances" as would lessen or prevent the danger. Juries, upon a consideration of the evidence, are much more capable of deciding this question than judges, and besides, it is a question of fact which belongs to the domain of juries to decide. If in the beginning, instead of leaving these questions to the jury, where they rightfully belong, judges had taken it upon themselves to decide that railroad companies were not required to do this thing or that thing for the safety of their employés or passengers, or were not required to operate their trains in this manner or that manner for a like purpose, there would to-day be small safety either for employés or passengers. It is mainly to the verdicts of juries we owe most of the improvements in appliances and methods of operating railroads which have lessened the dangers to their employés and passengers.

Whenever it is made to appear to a railroad company that it costs more to pay the damages assessed against it by the verdicts of juries for maintaining a dangerous condition of its track or appliances than it would cost to substitute safe ones in their place, the substitution is quickly made. But, as long as courts hold as matter of law that what the witnesses in this case declare to be "simply a dead trap" may be maintained with impunity and without incurring any pecuniary liability, the death trap will remain and the slaughter go on. The decision of the majority of the court makes human life in this circuit a cheaper commodity than lumber. It is perfectly certain from the evi-

dence in this case that the deceased brakeman would not have been killed had the guard rail been blocked.

Whether it was culpable negligence in the defendant not to block its guard rails at the place where this accident occurred was a question of fact to be submitted to the jury, and not one of law to be determined by this court.