GILBERT v. BURLINGTON, C. R. & N. RY. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1904.)

No. 1,986.

1. CONTRIBUTORY NEGLIGENCE AND PROXIMATE CAUSE—QUESTION FOR THE COURT.

While the questions of contributory negligence and proximate cause are, like other questions of fact, ordinarily for the jury, they are for the court where there is no substantial conflict in the evidence, and the conclusions from it are such that all reasonable men must agree upon them.

2. SAME—TEST.

The test of contributory negligence is whether or not the want of care directly contributes to the injury, not whether or not it is a more proximate cause of it than the negligence of the defendant. If it directly contributes to the injury, it is fatal to the plaintiff's recovery, although the negligence of the defendant may be the more proximate cause of it.

3. INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—CHOOSING THE MORE DANGEROUS OF TWO METHODS.

Where there is a comparatively safe and a more dangerous way of discharging a duty known to a servant, it is negligence for him to select the more dangerous method, and, if his selection directly contributes to his injury, it is fatal to his recovery therefor.

4. SAME—VOLUNTARY FAILURE TO USE UNCOUPLING DEVICE—EVIDENCE OF.

The act of March 2, 1893, c. 196, 27 Stat. 531 (3 U. S. Comp. St. 1901, p. 3174), which makes it the duty of common carriers to equip their cars engaged in interstate traffic with couplers which can be uncoupled "without the necessity of men going between the ends of the cars," imposes upon the employés the correlative duty of using these couplers when furnished, and of refraining from unnecessarily going between the ends of cars to uncouple them. A failure of a servant to discharge this duty, which directly contributes to his injury, is fatal to an action for damages on account of it.

5. SAME.

One who voluntarily and unnecessarily exposes himself to an imminent known danger, and thereby directly contributes to his injury, cannot escape the fatal effect of his contributory negligence because the unknown negligence of the defendant, which concurred to produce the injury, made the danger greater than he supposed it to be.

6. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

A railroad company accustomed to keep its guard rails blocked permitted the block to disappear from one of them. A brakeman, in ignorance that the block had disappeared, after trying to couple two moving cars by means of a lever on his side of the train, failed to use or to try to use the lever on the other side of the train, which had been furnished for the same purpose, entered between the ends of the cars, uncoupled them without the use of the lever, caught his foot between the guard rail and the main rail, and was injured. Held, conceding, but not deciding, that the company was negligent in permitting the guard rail to become unblocked, the plaintiff failed to exercise ordinary care; his failure directly contributed to his injury, and was fatal to his action for damages on account of it.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

For opinion below, see 123 Fed. 832.

This is an action brought by Charles Gilbert, the plaintiff in error, against the Burlington, Cedar Rapids & Northern Railway Company and the Chi-

128 F.—34

cago, Rock Island & Pacific Railway Company to recover damages for a personal injury which he sustained, as he alleged, by reason of the negligence of the Burlington Company. The complaint stated a cause of action against that company, and contained an averment to the effect that the Rock Island Company had assumed the debts and liabilities of the former corporation. The answer denied the material allegations of the complaint, and alleged that the plaintiff's injury was caused by his own negligence. There was a trial to a jury, and at the close of the plaintiff's evidence the court instructed the jury to return a verdict for the defendants. This ruling and the judgment upon it are assailed by the writ of error. The facts established at the close of the testimony were these: The Burlington Company owned and operated a railroad upon which it had blocked the guard rails and frogs, but a few days before the plaintiff was injured one of these blocks had disappeared from a guard rail in the yard at Iowa Falls, in the state of Iowa, where the plaintiff was at work for the company as head brakeman of a crew of men who were engaged in switching the cars and making up trains. Gilbert's two assistants in this crew had noticed that the blocking to the guard rail was gone, but Gilbert testified that he was not aware of that fact. A few moments after 6 o'clock in the afternoon of May 7, 1902, the plaintiff was engaged with his crew in uncoupling and kicking off upon another track the most southerly of a string of cars, which they were handling by means of an engine attached to the north end of it. The south car of this train was a Street stable car, and the next car north of it was a Northwestern car. Each of these cars was equipped with automatic couplers, the character and operation of which are described in this way in the testimony: "The cars are coupled together by what are known as 'automatic couplers,' which consist of drawbars with knuckles, so called, upon the ends of them, which open and shut, and when shut and clasped together are held in place by means of a pin, and which may be uncoupled by the raising of the pin which cannot be pulled clear out, however, but raised a certain distance and held, and which, when the coupling apparatus is in order, may be raised and held by the manipulation of a lever upon the outside of the car, which is attached to a pin by means of a rod and chain. When the pin is raised and held in place, then by the movement of either car from the other the cars become uncoupled." The lever to pull the pin on the north end of the Street stable car was on the east side of the car. The lever to pull the pin on the south end of the Northwestern car was on the west side of the car. There was no defect in the couplers nor in the apparatus for pulling the pins. It was impossible to pull the pins when the string of cars was drawn tight so that there was no slack between them, or, as the witnesses expressed it, "when the slack was tight." Gilbert was on the east side of the train, giving signals and orders to his men. He signaled the engineer to kick off the Street stable car, and undertook to uncouple it. The train stopped. He seized the handle of the lever on his side of the train, and endeavored to pull the pin with it, but the slack was tight, and he could not do so. The train started south. He walked by the side of it, and endeavored several times to pull the pin by means of the lever and failed. He then stepped in and walked along between the cars, which were moving at the rate of about two or three miles an hour, and tried in vain to raise the pin on the Street stable car with his hands. Thereupon he turned away, but still remained facing the Street stable car more than the Northwestern car, seized the chain, and tried to raise the pin in the latter car, but could not do so. He then turned back to the Street stable car, shook the chain on its pin, pulled the pin up, the cars uncoupled, he caught his foot in the unblocked guard rail, and lost his leg. It was the custom of the brakemen, when they were unable to pull the pin with the lever on their side of the train, to step in between the cars and raise the pin with their hands without attempting to use the lever upon the other side of the train. The pins were at about the height of Gilbert's breast, as he walked along between the cars. He testified that he did not try to operate the lever on the opposite side of the train; that one could get a leverage by its use, but that he did not know whether a man could use his strength to more advantage on the lever than he could directly on the pin or on the chain attached to it. He also testified at the trial that he did not find out what the trouble was with the levers and

pins, but a written account of the accident, which he signed about a month after his injury, contains this statement: "The second time I attempted to pull up this lever it worked all right; and I cut the car off. The slack mustn't have been out of the cars the first time I tried it. Sometimes they work hard when this is the case. Far as I know, the couplers were in good condition. They only worked hard, is all."

Humphrey Barton (John E. Samuelson, on the brief), for plaintiff in error.

McNeil V. Seymour (Edward C. Stringer and Carroll Wright, on the brief), for defendants in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The case presents these two questions: Was there any substantial evidence that the Burlington Company was guilty of a failure to exercise ordinary care to keep its railroad in a reasonably safe condition? Was the evidence that the plaintiff was guilty of negligence which directly contributed to his injury so conclusive that all reasonable men in the exercise of an impartial judgment must draw that conclusion?

The only fact disclosed by the evidence which is claimed by counsel for the plaintiff in error to indicate negligence on the part of the railroad company is that it adopted the practice of keeping its frogs and guard rails blocked, and then permitted one of them to become unblocked without notice to the plaintiff. But it is a mooted question among the owners and operators of railroads whether the blocked or the unblocked frog and guard rail present the nearer approach to safety. Many are of the opinion that the blocked rail is less dangerous than the unblocked rail, and adopt the practice of blocking their guard rails. Many are of the opposite opinion, and leave their rails unblocked. Railway companies have and must exercise much judgment and discretion in determining the methods of construction and operation of railroads which they adopt, and there is a wide field here, where their decision of doubtful questions in the affirmative or in the negative cannot be held to disclose any want of ordinary care. In the matter under consideration they are charged with negligence if they block their guard rails, because employés are liable to stub their toes and fall over the blocks (Morris v. Duluth, S. S. & A. Ry. Co., 108 Fed. 747, 47 C. C. A. 661), and they are charged with negligence if they fail to block them because servants are liable to put their feet between the rails and get them caught there to their injury (Kilpatrick v. Choctaw, O. & G. R. Co., 121 Fed. 11, 57 C. C. A. 255). In this state of the case the Supreme Court (Southern Pac. Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391) and this court (Kilpatrick v. Choctaw, O. & G. R. Co., 121 Fed. 11, 13, 57 C. C. A. 255, 257) have reached the conclusion that "railroad companies are at liberty to determine for themselves, in the light of their experience, which form of frog is preferable, so long as both forms are in common use, and that it is not competent for a jury to hold a railroad company guilty of negligence because it adopts

one form of frog in preference to another." The contention of counsel for the plaintiff here is, however, that the Burlington Company was guilty of negligence because it blocked its frogs and guard rails and then permitted the block to disappear from the rail, which inflicted the injury, without notice of its disappearance to the plaintiff. But actionable negligence is a breach of the duty to exercise ordinary care. Where there is no duty there can be no breach, no negligence, and no recovery. The Burlington Company owed the plaintiff no duty to block its frogs or guard rails, or to keep them blocked, because its duty of exercising ordinary care was completely discharged by leaving them all without blocks. If it blocked them, and kept them blocked, and this action made the railroad less dangerous, this action was nevertheless not the exercise of ordinary, but of extraordinary, care, and the failure to continue to exercise it does not seem to have been negligence, because negligence is confined to the failure to exercise ordinary care. As it was not a failure in the exercise of ordinary care, and was not actionable negligence for the company to leave all its guard rails and frogs unblocked, it is difficult to see how its failure to keep them all blocked, or its allowance of one or more of them to become or to remain unblocked, can constitute a failure to exercise that degree of care. Such a theory seems to be a contradiction of the axiom that the whole is greater than any of its parts and includes them all. The court below, however, was of the opinion that the plaintiff was guilty of contributory negligence which was fatal to his recovery even if the defendant was negligent in the care of its guard rail, and we turn to the consideration of that question.

There is no substantial conflict in the evidence, and the question here is whether or not it so conclusively discloses the fact that the plaintiff was guilty of negligence which contributed to his injury that all reasonable men in the exercise of their impartial judgment must draw that conclusion. The question of the existence of contributory negligence, like every other question of fact, is ordinarily conditioned by conflicting testimony and by doubtful deductions from the evidence, and hence is generally a question for the jury. But if, at the close of the trial, the evidence so clearly discloses the fact that the plaintiff was guilty of negligence which directly contributed to his injury that a finding to the contrary could not be sustained, it is the duty of the trial court to instruct the jury to return a verdict for the defendant. Clark v. Zarniko, 106 Fed. 607, 608, 45 C. C. A. 494, 496; Railway Co. v. Davis, 53 Fed. 61, 3 C. C. A. 429; Gowen v. Harley, 56 Fed. 973, 980, 6 C. C. A. 190, 197; Railway Co. v. Moseley, 57 Fed. 921, 922, 923, 6 C. C. A. 641, 643; Reynolds v. Railroad Co., 69 Fed. 808, 810, 16 C. C. A. 435, 437, 438, 29 L. R. A. 695; Laclede Fire-Brick Mfg. Co. v. Hartford Steam-Boiler Inspection & Ins. Co., 60 Fed. 351, 354, 9 C. C. A. 1, 4; Motey v. Granite Co., 74 Fed. 155, 157, 20 C. C. A. 366, 368; Commissioners v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U. S. 727, 733, 8 Sup. Ct. 266, 31 L. Ed. 287; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213.

Much is found in the brief and much was said upon the argument concerning the question whether or not the negligence of the plaintiff was the proximate cause of his injury, and concerning the duty of the court below to submit that issue to the jury. But the court's duty in that regard was governed by the same rule. Railway Co. v. Davis, 3 C. C. A. 429, 431, 53 Fed. 61, 63; Missouri Pac. R. Co. v. Moseley, 57 Fed. 921, 926, 6 C. C. A. 641, 647; Motey v. Granite Co., 20 C. C. A. 366, 369, 74 Fed. 155, 157.

Again, the question in cases of alleged contributory negligence is not whether the negligence of the plaintiff or that of the defendant is the more proximate cause of the injury, but it is whether or not the negligence of the plaintiff directly contributed to it. One whose negligence directly contributed to his injury cannot recover damages of another whose negligence concurred to cause it, although the carelessness of the latter was the more proximate cause of it. Pyle v. Clark, 25 C. C. A. 190, 192, 79 Fed. 744, 746, 747; Motey v. Granite Co., 20 C. C. A. 366, 369, 74 Fed. 156, 159; Chicago & N. W. Ry. Co. v. Davis, 3 C. C. A. 429, 431, 53 Fed. 61, 63; Railway Co. v. Moseley, 6 C. C. A. 641, 643, 646, 57 Fed. 921-923, 925; Reynolds v. Railway Co., 16 C. C. A. 435, 69 Fed. 808, 811; Schofield v. Railway Co., 114 U. S. 615, 618, 5 Sup. Ct. 1125, 29 L. Ed. 224; Railroad Co. v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542; Hayden v. Railway Co., 124 Mo. 566, 573, 28 S. W. 74; Wilcox v. Railway Co., 39 N. Y. 358, 100 Am. Dec. 440.

Let us apply these rules to the facts of this case. It is so dangerous for the employés of railroad companies to go between the ends of cars to couple or to uncouple them that Congress passed an act on March 2, 1893, which made it the duty of common carriers to equip all their cars engaged in moving interstate traffic with couplers which can be uncoupled "without the necessity of men going between the ends of the cars" (27 Stat. 531, c. 196, 3 U. S. Comp. St. p. 3174), and the Legislatures of many of the states have enacted laws of a similar nature to regulate carriers within their respective borders. In this way the duty was imposed upon common carriers by the law to so equip their cars that they could be uncoupled without requiring their servants to go between the ends of the cars. The devolution of this duty upon the carriers necessarily imposed upon their servants the correlative duty of using the equipment thus furnished to them, and of refraining from going between the ends of the cars to couple or uncouple them unless compelled to do so by necessity. Under this legislation the breach of either of these duties became a failure to exercise ordinary care, and constituted actionable negligence. The two cars which the plaintiff sought to uncouple were supplied with mechanical devices for separating them without requiring the employés of the railroad company to go between the ends of the cars. These devices were not defective in construction or repair. There were two of them, either one of which would ordinarily enable the servant to uncouple the two cars. One of them had its lever on the east side of the train, where the plaintiff was at work, and could be operated from that station. The other had its lever upon the west side of the train, and could be utilized only from that side. The

plaintiff first endeavored to uncouple the cars by the use of the device on the east side of the train while the string of cars was stationary.. When the train was drawn tight, so that there was no slack between the cars, or, as the witnesses expressed it, "when the slack was tight," the cars could not be uncoupled either with or without the use of the levers. When the plaintiff first attempted to separate the cars the slack was tight, and consequently he could not pull the pin by the use of the lever. The engine then pushed the cars to the south, and as they moved along the plaintiff attempted several times to pull the pin by means of the lever upon which he still kept his hand, and failed. He then stepped in between the ends of the cars while they were moving at the rate of between two and three miles an hour, and tried to uncouple them by seizing the chain above the pin with his hands and raising them. The act of placing himself between the ends of the cars to uncouple them without first endeavoring to do so by the use of the lever on the opposite side was an act of negligence, because the use of that lever was a less dangerous method of separating the cars. Where there is a comparatively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is a want of ordinary care for him to select and use the more dangerous method. Morris v. Duluth S. S. & A. Ry. Co., 108 Fed. 747, 749, 47 C. C. A. 661, 664; Gowen v. Harley, 56 Fed. 973, 983, 6 C. C. A. 190, 200; Coal Co. v. Reid, 85 Fed. 914, 29 C. C. A. 475; McCain v. Railroad Co., 76 Fed. 125, 126, 22 C. C. A. 99, 101; Russell v. Tillotson, 140 Mass. 201, 4 N. E. 231; Gleason v. Railway Co., 73 Fed. 647, 19 C. C. A. 636; Cunningham v. Railway Co. (C. C.) 17 Fed. 882; English v. Railway Co. (C. C.) 24 Fed. 906. Not only this, but if the plaintiff had adopted the less dangerous method, if he had proceeded to the other side of the train and had uncoupled the cars by the use of the west lever, he would not have walked in the space between the rails where his foot was caught, and he would not have been injured. Even if he had first vainly tried to operate that lever, he would not have walked over the space where he was hurt, and he would have escaped injury. So that there seems to be no escape for a reasonable man, who considers impartially these facts, from the conclusion that the plaintiff was guilty of negligence in refusing to use the lever on the west side of the train and in entering and walking between the moving cars for the purpose of uncoupling them, nor from the conclusion that this negligence directly contributed to his injury.

Counsel for the plaintiff, however, ably and persuasively urge several reasons why, in their opinion, the negligence of the plaintiff was not fatal to his recovery here. They call attention to the testimony of several witnesses to the effect that it was the custom or habit of the servants of the company to ignore the lever on the opposite side of the train, and to step in between the cars when they were moving, and uncouple them with their hands, when the lever on their side of the train would not produce this effect, and they insist that it was not negligence for the plaintiff to follow the ordinary course pursued by his associate operators in cases of this character. But "if a man exposes himself to a risk unnecessarily he is guilty of negligence,

although it be shown that other persons have done the same thing and escaped unhurt. The inherent quality of an act is not changed whether done by one or many." Dawson v. Chicago, R. I. & P. R. Co., 114 Fed. 870, 882, 52 C. C. A. 286, 288. The danger of entering and walking between the moving cars was so imminent and obvious that no custom to do so unnecessarily could deprive the act of its inherently negligent character.

Counsel next say that, even if the plaintiff failed to exercise reasonable care to protect himself against the ordinary dangers of walking along the track between the cars and uncoupling them, he did not fail in the exercise of ordinary care to protect himself against the particular danger from the unblocked guard rail, because he was ignorant of its condition, and could not have been negligent about it. In support of this contention they cite, among other cases, Smithwick v. Hall & Upson Co. (Conn.) 21 Atl. 924, 12 L. R. A. 279, 21 Am. St. Rep. 104, and Choctaw, O. & G. Ry. Co. v. Holloway, 114 Fed. 458, 464, 52 C. C. A. 260, 266. In the former case the plaintiff was instructed to work, handling ice, upon a certain portion of a platform which was guarded, and forbidden to labor upon another portion of the platform which was not guarded, lest he should slip off, fall to the ground below, and be injured. He disregarded his instructions, worked upon the forbidden portion of the platform, and was injured by bricks, which through the negligence of the master, fell upon him from an adjoining wall. In the latter case the plaintiff, a fireman, was guilty of negligence in riding upon an engine and tender with the tender foremost, without a light upon it, in the night. The negligence of the defendant was its failure to equip the engine with a brake, so that when the brake upon the tender was applied the engine crowded against it and injured the plaintiff, who was between the engine and the tender. The marked difference between these cases and the action under consideration is that in the former the negligence of the plaintiffs did not produce or increase the danger from the negligence of the defendants, while in the latter the plaintiff's negligence exposed him to the danger, and inflicted upon him the injury which he would not otherwise have suffered. In the former the workman upon the slippery platform was in as much danger from the falling bricks upon the part of the platform where he was instructed to work as he was upon the forbidden part, and the fireman upon the engine was in as much danger from the absence of a brake, with a good light upon the advancing end of the backing tender, or in the daytime, as he was when the tender was without a light in the night. In the case under consideration the act of the plaintiff in entering and walking between the moving cars exposed him to the danger from the unblocked guard, to which he would not otherwise have been subjected. In the former cases the plaintiffs' negligence was too remote to contribute to the injuries they suffered, while in the latter it was primal, proximate, and causal. While it is true in cases of little danger, when the negligence of the plaintiff is remote, and does not clearly contribute to his injury—as in the case of Choctaw, O. & G. Ry. Co. v. Holloway—that a servant may not be guilty of contributory negligence in exposing himself to a risk of which he is

ignorant, and of which an ordinarily prudent person would not have been aware, although he fails to exercise ordinary care to protect himself against known dangers, that rule is not of universal application. It is not applicable to cases in which the danger is known and great, and the negligence of the servant is clearly and directly contributory to the injury. An employé rides upon the pilot of an engine when there are cars on which he could ride with safety. He is injured through the negligence of the master, of the effects of which he was ignorant, when he would have suffered no harm if either he or the master had not been guilty of want of ordinary care. He cannot recover, because his negligence contributes to the injury, which the unknown negligence of the master concurred to cause. A pedestrian is about to cross a railroad. It is his duty to stop and look and listen before he crosses. It is the duty of the railroad company to ring a bell or sound a whistle to warn him of approaching trains. A train comes without whistle or bell, and gives no warning of its approach. The footman walks onto the railroad without stopping or looking along the track to the right or the left, and he is injured. He cannot recover, although he had no knowledge that the train carried no bell or whistle, and that no signal would be given, because his negligence contributed to the injury. A brakeman carelessly jumps onto the brake-beam of a moving car and seizes a handhold not placed upon it to sustain a strain of that character, when there are other handholds for the purpose of enabling men to climb upon the cars, which he ought to have used. He is ignorant that through the negligence of the master one of the screws which keeps the handhold he seizes in place does not secure it. He pulls out the screw, falls, and is injured. He cannot recover, because his negligence directly contributes to his injury. Indeed, where the plaintiff knows he is exposing himself to great danger, and his negligence directly contributes to his injury, it is not his want of care with reference to the particular negligence or defect that concurs to injure him, but his general breach of duty toward his master, his failure to exercise due care in view of the knowledge which he has, that is fatal to his recovery. When he knowingly departs from the line of duty, and unnecessarily causes his own injury by putting himself in a place which he knows to be dangerous, it is no excuse for his breach of duty that the place was more dangerous than he supposed it to be, or that he did not know the exact degree of the danger he carelessly incurred. One who voluntarily and unnecessarily exposes himself to a known and great danger, and thereby directly contributes to his injury, cannot escape the fatal effect of his contributory negligence because the negligence of the defendant which concurred to produce the injury, and of which he was ignorant, made the danger greater than he supposed it to be. Railroad Co. v. Jones, 95 U. S. 439, 440, 442, 443, 24 L. Ed. 506; Railroad Co. v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542; Dawson v. Chicago, R. I. & P. Ry. Co., 114 Fed. 870, 52 C. C. A. 286; Erie R. Co. v. Kane, 118 Fed. 223, 235, 55 C. C. A. 129, 141; Kresanowski v. Railroad Co. (C. C.) 18 Fed. 229.

The case at bar falls within this rule. The place into which the plaintiff ventured was dangerous—so perilous that Congress had en-

acted a statute to relieve the plaintiff from the duty of exposing himself to its danger. The peril of the place arose in large part from unavoidable obstructions upon the roadbed as a path for a pedestrian, caused by the rails and ties, and from the necessity of constantly changing the bed, its ties and rails, in order to keep them in proper repair. The danger from the negligence of the defendant in permitting the guard rail to become and remain unblocked was of the same nature as, and was in reality a part of, the danger to which the plaintiff exposed himself when he stepped between the cars, and his ignorance of the particular danger from the unblocked guard rail, while he knew the general and imminent danger of the place, constituted no legal excuse for his want of ordinary care, and cannot be permitted to relieve him from its fatal effect. This view of this question is sustained by a moment's consideration of the fact that the contention of the plaintiff's counsel is suicidal. If, as they argue, the plaintiff is guilty of no actionable or contributory negligence in entering and walking between the cars because he did not know or anticipate the negligence of the defendant in leaving the guard rail unblocked, then by the same mark the defendant was guilty of no actionable negligence in leaving the guard rail unblocked, because it did not know or anticipate that the plaintiff would be guilty of the negligence of entering and walking between the moving cars to uncouple them, and, if he had not done so, he would not have been injured. The plaintiff then failed to discharge his duty to exercise ordinary care when he entered and walked between the moving cars to uncouple them, and this negligence directly contributed to his injury. But counsel for the plaintiff insist that his want of care was excusable, because it was necessary for him to pursue this course, and because his injury was inflicted after he had uncoupled the cars, and while he was attempting to retire from his dangerous position. But the cause of his presence between the cars, of his retiring from that place, and of the injury which he sustained while engaged in the latter act, was his negligence in placing himself between the cars. If he had not put himself between them, he would not have withdrawn himself from that dangerous station, and he would not have been injured.

It will be conceded for the purposes of this case, but it is not decided, that, where the levers furnished to uncouple cars cannot be made to accomplish that end, it is sometimes necessary for brakemen to go between the ends of moving cars to uncouple them, and that when that necessity exists it is not negligence for them to pursue this course. This concession brings us to the question whether or not there is any substantial evidence in the record before us that such a necessity existed in this case. The evidence was uncontradicted and conclusive that the plaintiff was guilty of contributory negligence when he entered between the cars, because it was then his duty to use the lever on the other side of the train before he stepped between them, and he had not tried to operate that lever. Hence the burden was upon the plaintiff to establish the necessity for entering between the cars—a necessity which constituted his excuse for adopting that course. For this purpose the plaintiff testified that he

stepped in between the moving cars, and, after vainly endeavoring to pull the pin attached to the east lever, which he had attempted to operate, he took hold of the chain attached to the west lever with both hands, tried to pull it up, and failed, and that, if he had been on the other side of the train, he could not have uncoupled the cars by the use of the west lever because the coupler would not work. He also testified that there was no structural defect in the apparatus for uncoupling; that he did not discover what the trouble with it was; that the slack was tight when he tried the east lever, so that the pin could not then be drawn; that when he tried to draw the pin attached to the west lever he took hold of the chain about 4½ feet above the ground, or at about the height of his breast, at a point where a man could use but a small portion of his strength in lifting; and in his written account of the accident, made about a month after it occurred, he stated, when referring to the east lever: "The second time I attempted to pull up this lever it worked all right, and I cut the car off. The slack mustn't have been out of the car the first time I tried it." It was the duty of the court below to take this question of the necessity of the plaintiff's walking between the cars from the jury unless there was substantial evidence of that necessity which would sustain a verdict that it existed. The plaintiff did not know that the west lever would not work when he committed his first breach of duty by entering between the cars, for he had not then tried to raise the pin attached to it by lifting up the chain or in any other way. The only means of knowledge which he ever acquired upon which to found his testimony that the west lever would not operate was his vain attempt to draw the pin attached to it by lifting on the chain with his hands at the height of his breast. When all the testimony upon this question of necessity is reduced to its last analysis, it rests on the single fact that the plaintiff could not pull the pin attached to the west lever by lifting on the chain attached to it with his hands at the height of his breast at the particular moment when he made the attempt, although the lever and its connections were free from defects, although he did not try to operate them, and although he did not ascertain or know what the trouble with them was. That single fact is too remote and inconsequential to warrant a finding that the west lever would not pull the pin. Many other facts, of which the record presents no substantial evidence, are indispensable to such a deduction, especially the facts that the long arm of the west lever was of the same length or shorter than its short arm, so that power applied to the long arm would have the same effect as, or less effect than, power applied directly to the chain; that one walking between cars could apply as much power by lifting with his hands at the height of his breast as he could when walking freely by the side of the train by applying his strength to the handle of a lever; and that the slack was not tight, and the time was opportune when the plaintiff lifted on the chain. The evidence was insufficient to warrant a finding of these facts, or of the fact that it was necessary for the plaintiff to go between the ends of the cars to uncouple them.

Our conclusion is that the plaintiff failed to exercise ordinary care when he walked between the moving cars for the purpose of uncoupling them without first endeavoring to do so by means of the west lever, which had been furnished to him by the company for that purpose; that this negligence directly contributed to his injury; that these facts appear so clearly from the evidence that all reasonable men in the exercise of a fair judgment must come to these conclusions; and that the judgment below must be affirmed. It is so ordered.

THAYER, Circuit Judge. I concur in the order affirming the judgment below. I am not prepared to say that the plaintiff was guilty of negligence because he did not try to lift the coupling pin by the lever on the opposite or west side of the train before stepping in between the tracks. In view of the situation, it is most likely that he could not conveniently go around to the west side of the train to reach the lever on that side, and that it would have occasioned considerable delay had he done so. For these reasons I am not willing to hold that it was his duty to have gone around to the west side of the train. I do agree to the proposition, however, that, where there are two means of doing a given act, by one of which the act may be done with comparative safety, while the other means of doing the act are dangerous, it is the servant's duty to choose the safer way, unless he is forced to choose the other by stress of circumstances. In the present case there was no defect, so far as appears, in the appliance for raising the coupling pin by the use of the lever on the east side of the car. The reason why the pin could not be moved by that lever when the plaintiff made the attempt was doubtless due to the fact that there was at the time no slack. If the plaintiff had waited for a favorable opportunity he could doubtless have lifted the pin by the use of that lever. He did not do so, but voluntarily placed himself in a position of great danger by stepping in between the rails. I think that the act of Congress, which was passed for the protection of brakemen, amounts to a legislative declaration that a brakeman ought not to step in between the rails to uncouple a car in a moving train; and when it appears that a brakeman has placed himself in such a situation unnecessarily, not being compelled to do so by stress of circumstances, and receives an injury, he is guilty of such negligence as prevents a recovery. The testimony in the case at bar, as I view it, shows that the plaintiff stepped in between the rails when the train was moving, without adequate excuse for so doing, and that this act on his part beyond controversy immediately contributed to his injury, and the court below properly instructed the jury that he could not recover.