## SOUTHERN ELECTRIC RY. CO. v. HAGEMAN.

### (Circuit Court of Appeals, Eighth Circuit. March 9, 1903.)

### No. 1,754.

1. JURISDICTION OF FEDERAL COURT—PROOF OF CITIZENSHIP — MANNER OF RAISING ISSUE.

A complaint filed in a federal court contained the requisite allegations showing diversity of citizenship. The answer was a general denial. No plea to the jurisdiction was filed, and there was some evidence tending to show diversity of citizenship. At the conclusion of the case the defendant asked an instruction directing a verdict in its favor, but the court was not advised that the instruction was intended to challenge the jurisdiction of the court or the sufficiency of the proof to show diversity of citizenship. *Held*, that the instruction did not fairly challenge the jurisdiction of the court, and, as the record, considered as a whole, did not show want of jurisdiction, the refusal of the instruction was not erroneous.

2. STREET RAILROADS—ACTION FOR COLLISION WITH VEHICLE—PLEADING NEGLIGENCE.

A general allegation of negligence in a complaint in an action against a street railroad company to recover for injuries received by plaintiff by reason of a surrey in which she was riding having been struck by a street car, as that "one of defendant's motor cars, run and operated by defendant's motorman, * * * without notice or warning to plaintiff, was carelessly and negligently caused to run up to and against said surrey, * * * and that her said injuries were wholly occasioned by the carelessness and negligence of said defendant's motorman in so operating the defendant's said motor car as to cause it to strike said surrey," is sufficient, in the absence of a motion to require it to be made more specific, to entitle plaintiff to prove and rely on any omission of duty on the part of the motorman in the management of the car.

3. SAME—INSTRUCTIONS.

The charge of the court, in an action to recover damages from a street railroad company for injuries received by plaintiff by reason of the vehicle in which she was riding having been struck by a car, examined, and *held* not erroneous or misleading, as applied to the evidence, and, considered as a whole, to properly submit to the jury the questions of negligence and contributory negligence.

4. SAME—DUTY OF CARE IN OPERATING CARS.

A motorman in charge of a street car is under the same obligation to exercise care and prudence to avoid collisions and to avoid injuring people as they are to exercise care not to get in way of cars, each having an equal right to the use of the street.

5. INSTRUCTIONS—REFUSAL OF REQUESTS.

A court is not required to give an instruction prepared by counsel, no matter how correct it may be in the abstract, if the same principle, or substantially the same principle, has been enunciated in its charge, though in different language.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

¶ 1. Diverse citizenship as ground of federal jurisdiction, see note to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

¶ 4. Care required of motormen, see note to Stelk v. McNulta, 40 C. C. A. 361.

Walter H. Saunders and Frederick W. Lehmann (W. F. Boyle and H. S. Priest, on the brief), for plaintiff in error.

Seneca N. Taylor (S. C. Taylor and Charles Erd, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an action to recover damages for personal injuries which Cora Hageman, the plaintiff below, sustained by being thrown from a vehicle in which she was riding, by a street car which belonged to, and was being operated at the time by, the Southern Electric Railway Company, the plaintiff in error. The collision occurred on South Broadway, in the city of St. Louis, in the month of November, 1898.

The persons who testified in behalf of the plaintiff at the trial, who witnessed the accident, and were acquainted with the circumstances under which the collision occurred, were the plaintiff herself and her two sisters, who were riding in the vehicle with her. These witnesses concurred in the following statement relative to the affair: That in the early evening of the day in question they were driving north along South Broadway in a one-horse surrey, on the east side of the defendant's street railway tracks, which were laid about in the center of the street; that the plaintiff was acting as driver and sat on the front seat while her two sisters occupied the back seat; that they reached a point in the street where, on the east side of the tracks, it was very muddy for a distance of about 200 feet; that to avoid the mudhole the plaintiff drove upon the east track; that as she did so her two sisters, who were on the lookout, looked back south, in the direction from which a street car might be expected to approach, but saw none until they had driven along the track about 50 or 60 feet, when the headlight of a car that was coming around a curve in the street, some 2 blocks or 900 feet distant from and in the rear of the surrey, was observed; that, anticipating no immediate danger, not knowing how fast the car was approaching, they continued to drive along the track a little distance, intending to turn off as soon as they had passed the mudhole; that after they had driven about 75 feet along the track, and the car had approached to within 60 or 75 feet, one of the sisters on the back seat discovered for the first time that the car was approaching very fast—faster than cars usually run, and at a rate of speed which she estimated to be near 30 miles per hour, whereupon she called to the plaintiff to drive off the track as quick as possible, and at the same time shouted to the motorman to stop, which he failed to do; that the plaintiff, when she was thus directed to turn off the track, attempted to do so immediately, but before the vehicle had cleared the track it was struck by the car and overturned; and that in consequence thereof the plaintiff sustained very severe injuries.

The witnesses who were produced by the defendant company, who were present when the collision occurred, were the motorman and the conductor of the car, the latter of whom, however, being on the rear platform did not see the surrey, as he admitted, until it had been overturned. The motorman made the following statement, in sub-

stance: That he was returning to the car shed with his car, intending to turn it in for the night; that he had no passengers, and did not stop on that trip to take up any passengers; that he was running his car at the rate of about 7 or 8 miles per hour, as he judged; that he saw the surrey in which the plaintiff and her sisters were riding, when he was about 400 feet distant therefrom; that the surrey was then proceeding north on the west side of the tracks, where the traveling was comparatively good; that as he neared the surrey, and was within 35 or 40 feet from the same, it turned east, and was driven by the persons in charge directly across the track in front of his car, and in the direction of the mudhole, which he admitted to be on the east side of the tracks; that he made every possible effort to stop his car, but failed to do so in time, and that it came into collision with the vehicle in the manner already described.

Two employés of the defendant company, one of them a track laborer and the other a motoneer, testified that shortly after the accident occurred, when the plaintiff and her sisters had been taken to the car sheds of the defendant company, they overheard one of the sisters remark, "Cora, I told you you could not cross in time;" but both of the plaintiff's sisters denied that they made any such statement, or that they were driving, prior to the accident, on the west side of the street.

It will be observed, therefore, that the evidence of three persons who testified in the plaintiff's behalf tended strongly to establish a case of culpable negligence on the part of the defendant company—such negligence consisting in running the car in question along a public thoroughfare at an excessive rate of speed, and in the failure of the motorman to take such reasonable precautions to avoid a collision as ought to have been taken after he discovered the presence of the surrey—while the testimony of a single witness on behalf of the railway company tended to show that the collision was occasioned by an act of inexcusable negligence on the part of the plaintiff herself. Moreover, all of the four eyewitnesses of the occurrence must be esteemed interested witnesses, and no preference can be given to the statements of any of them on the ground that they were disinterested or impartial observers of the accident. The case, therefore, upon the merits, was one for the jury; and the finding of the jury on the issues submitted to them ought not to be disturbed unless it clearly appears that some action was taken by the trial court which misled the jury, and induced them to render a verdict that otherwise would not have been rendered.

The first ground upon which the plaintiff in error relies to obtain a reversal of the judgment below is that the plaintiff below did not prove the fact which she alleged in her complaint, namely, that at the time the present action was brought she was a citizen of the state of Illinois, and a resident of Tazewell county, in that state. It is claimed that the defendant below put this allegation in issue by its answer, and that, because it was not clearly proven on the trial, the lower court should have directed the jury to return a verdict in favor of the defendant company, as it was requested to do. This contention, we think, should be overruled for the following reasons: The jurisdictional question was raised in the trial court in no other way

than by the peremptory instruction to return a verdict for the defendant to which we have last alluded, and that instruction neither advised the trial judge nor the opposing counsel that it was asked because the plaintiff had not proved that she was a citizen of the state of Illinois, and because the court was for that reason without jurisdiction. After carefully scanning the record, we have no reason to believe that the lower court acted upon the instruction with the understanding that it was intended to challenge the sufficiency of the evidence to establish that fact. Besides, if it had been given, and a verdict and judgment in accordance therewith had followed, the judgment would have operated as a bar to the further prosecution of the cause of action in any court, since the record would not have shown upon what ground a recovery was denied, whereas the necessary jurisdictional averments were contained in the plaintiff's petition. It goes without saying that the defendant was not entitled to a judgment that would have had such an effect, even if the point which it made was well taken. At most, it was only entitled to a judgment that the case be dismissed for want of jurisdiction. If the instruction in question was asked with a view of challenging the jurisdiction of the court, it should have been so framed as to disclose that fact; that is to say, if counsel for the plaintiff in error believed that the plaintiff had failed to prove with sufficient certainty that she was a citizen of the state of Illinois when the action was instituted, they should have so advised the trial court, and not allowed it to act on the instruction in the dark. If the purpose of the request had been disclosed, and the evidence already introduced had been deemed insufficient by the trial court to establish her citizenship, the requisite proof that the plaintiff had in fact taken up her abode in the state of Illinois, with intent to make it her domicile, would undoubtedly have been forthcoming. As it was, the testimony which was introduced showed that she went to Illinois five months before the action was brought, and resided there continuously until the suit was filed, and for a month or more thereafter, when she returned to the city of St. Louis on a visit to her relatives, remaining a week or more, and that she then returned to Illinois, where she has ever since resided. This evidence was doubtless regarded as sufficient to establish the fact that she was a citizen of Illinois, inasmuch as no plea to the jurisdiction had been interposed, and the fact of citizenship had not been challenged otherwise than by a general denial of all the allegations of the complaint which was contained in the defendant's answer. This method of raising the issue was not calculated to attract serious attention. Moreover, it cannot be successfully maintained that upon the face of the entire record the judgment below appears to be void for want of jurisdiction. We accordingly hold that the instruction, in the form in which it was presented, did not fairly challenge the sufficiency of the evidence to warrant the jury in finding that the plaintiff was a citizen of Illinois, or to bring that question before us for review. The testimony to which allusion has been made was testimony which certainly had some tendency to show that the plaintiff was a citizen and resident of that state when the action was brought, so that the record, considered as a whole, cannot be said to disclose that the judgment is void for want of jurisdiction.

Another point on which counsel for the plaintiff in error seem to place some reliance is that the only negligence charged in the petition was the failure of the motorman to sound his gong as the car approached the surrey; and it is said that inasmuch as it appears that such omission of duty was not the proximate cause of the collision, because the plaintiff and her sisters saw the car when it was 900 feet distant, the trial court erred in not directing the jury to return a verdict for the defendant on the ground that the plaintiff had failed to establish the act of negligence on which she relied for a recovery. But this contention, we think, places a false construction on the averments contained in the petition. Nothing was said in the plaintiff's petition about a failure to sound the gong being the cause of the collision. She averred in her complaint that:

"One of the defendant's motor cars, run and operated by defendant's motorman, and in his charge, * * * without notice or warning to plaintiff, was carelessly and negligently caused to run up to and against said surrey with force and violence as plaintiff was endeavoring to drive said surrey off the track, * * * and that her said injuries were wholly occasioned by the carelessness and negligence of said defendant's motorman in so operating the defendant's said motor car as to cause it to strike said surrey."

This was an allegation of negligence in a very general form, such as entitled the plaintiff to prove and rely upon any omission of duty on the part of the motorman in the management of the car; and especially is this so in a case where no motion was made to compel the plaintiff to make her complaint more specific, and where the case was tried throughout on the obvious assumption that she would be entitled to recover if she succeeded in showing that the motorman was guilty of any dereliction of duty, or of failing to take any reasonable precaution to avoid the collision which he might and ought to have taken. The peremptory instruction, therefore, cannot be sustained as a proper instruction on the ground last suggested.

The remaining questions to be considered relate to the charge of the trial judge, and, for convenient reference, the material parts thereof are quoted below in the margin.[1] The only portions of the charge

[1] "You have seen from these pleadings that the injury complained of is charged to be the carelessly and negligently causing said car to run upon and against said surrey with force and violence while the plaintiff was endeavoring to drive it off the track, whereby her injury resulted. This allegation of negligence is put in issue by the general denial, and therefore the burden of proof is put on the plaintiff to establish all the allegations of the complaint, including that one; that is to say, she must show by the preponderance of the proof that her allegations are true.

"The defendant, in addition to denying the complaint, interposes the defense of contributory negligence; that is to say, it alleges that plaintiff's injuries, if any, were caused by her own negligence in driving in front of said car so close thereto that it was impossible for the motorman thereof to avoid a collision with the vehicle in which she was driving, when by looking she might have seen, or by listening she might have heard, said approaching car, and might have avoided said accident; and the burden of proof is on the defendant to show by the weight of the evidence that she was guilty of contributory negligence, unless her own evidence establishes that fact.

"In trying these issues there are two theories: The first theory is that the plaintiff was driving on the west side of the track, and drove her vehicle in front of the car, and so close thereto that the defendant's motorman was

to which exceptions were taken at the trial are those portions which have been italicized.

It will be observed, by a careful analysis of the instructions, that the issue as to whether the plaintiff and her sisters were driving along the west side of the railway tracks, and suddenly turned east upon the track, immediately in front of the approaching car, in the manner explained by the motorman, or whether they were driving on the east side of the track, and went upon the track for the purpose of avoiding a mudhole, in the manner testified to by them, was fairly submitted to the jury; and we have little doubt that the latter view of the case was the one which the jury adopted, as being in most respects

unable, with the means and contrivances at hand, to stop the car until the collision had occurred.

"The second theory is that the plaintiff in this suit was driving on the east side of South Broadway street northwardly, and came to a pond of water or bad place in the road, through which she wished to avoid driving, and, to avoid it, drove her vehicle upon the railroad track of the defendant, and drove along the track parallel with the water and mud and bad place in the road; that before entering upon the track her companions looked behind to see if any car was in sight, and, there being none in sight, she drove upon the railway track; and that while upon the railway track the defendant company, through its agent, negligently ran its car against the surrey, and upset it, and injured the plaintiff.

"It is for you to determine which, if either, of these two theories is true; and, in order to present them concisely, the court will say that if you find from the testimony in the case that the plaintiff was driving north on the west side of the track, and carelessly and negligently drove across the track in front of the defendant's car, which was running on the east track in the same direction, and so close thereto as that the motorman in charge thereof, in the exercise of proper care and diligence, with the means and contrivances at hand, could not stop the car until the collision had occurred, then the plaintiff cannot recover.

"But on the other hand, if you find that the plaintiff was driving on the west side of the track, as hereinbefore stated, and drove her vehicle across the track in front of defendant's car, yet if you further find from the evidence that defendant's motorman, by the exercise of proper care and vigilance, could have avoided the injury by stopping his car upon the first appearance of danger, and before the collision occurred, and negligently and carelessly failed to do so, then the plaintiff should recover.

"Now as to the other theory: If you find from the evidence that the plaintiff was driving a vehicle along the east side of defendant's street railway track, and came to a pond of water, or a muddy, bad place in the road, and wished to avoid it by driving along and upon the track, then the court tells you that it was her duty, or the duty of those who were riding in the vehicle with her, while she was driving along the defendant's track in the direction in which the cars were run thereon, to observe the surroundings, and from time to time to look behind to see whether a car was approaching on the track on which they were driving, and to turn off the track in time to enable the car to pass without being unnecessarily delayed, and this duty is imposed by law because the cars on their own tracks have the right of way; but because they have the right of way, and because it is the duty of pedestrians and persons riding in or driving vehicles to get off the track, so that the cars may not be unnecessarily impeded, this fact does not relieve the defendant's agents from keeping a strict lookout, and from using reasonable diligence and care to avoid injury to pedestrians or persons driving or riding in vehicles. The law requires each to exercise ordinary care and prudence—the one to avoid injury to himself, and the other to avoid inflicting an injury on others. So that if, from all the evidence, you find that the plaintiff, while driving along the east side of the track, in order to avoid the water and mud,

the more reasonable and probable. The jury were also instructed, in substance, that if the plaintiff went upon the track from the west side, immediately in front of the approaching car, and so suddenly that the motorman, by the exercise of proper care, could not stop his car, then the plaintiff was guilty of contributory negligence, and could not recover; furthermore, that, if the plaintiff drove on the track from the east side, it was her duty to be mindful of her surroundings, and to be on the lookout for cars, and to turn off on the approach of a car, so as not to delay it unnecessarily, and that if she failed in the performance of her duty in any of these respects, and directly contributed to the collision, she could not recover. On the

as before stated, failed to exercise such care and diligence as I have just indicated, and by reason of such failure and negligence directly contributed to the injury complained of, then your verdict should be for the company, *unless you further find from the evidence that the defendant's motorman, by the exercise of proper care and vigilance, could have avoided the collision, by stopping his car, but negligently failed to do so, in which event the plaintiff should recover.*

"Upon the question as to whether or not the injury was a direct result of the plaintiff's negligence, or whether it resulted from the direct negligence of the motorman of the defendant in running and operating his said motor car on the occasion in question, you can take into consideration all the facts and circumstances as proved by the evidence to have existed at the time when and place where the injury occurred, and give to each fact and circumstance, and to the testimony of each witness, such weight only as you deem such fact, circumstance, or testimony entitled to, in connection with all the evidence in the case.

"In the determination of this question, you must not overlook the fact that because the railway company, as stated above, has the right of way on its tracks, that all persons in a town or city have the right to cross the tracks, or to drive upon them, so they don't abuse the right by unnecessarily delaying or impeding the progress of the cars. Each must exercise the right to use the streets with due regard to the rights of others, and hence, although you may believe from the evidence that plaintiff was negligent in driving the vehicle upon and along the defendant's railway track, yet if you further believe from the evidence that after she had driven her said vehicle upon the track the motorman operating defendant's motor car saw, or by the exercise of ordinary care might have seen, said vehicle upon the track a sufficient length of time before the collision occurred, as that by the exercise of ordinary care he could have avoided the collision, it was his duty to have done so, and if you find he did not, and the plaintiff was injured as the direct result of such negligence and failure on his part, then she is entitled to recover. *Nor does the law permit the defendant's motorman to speculate or experiment as to whether the vehicle can get off the track before his car strikes it. On the contrary, at the first appearance of danger it is his duty to take the necessary steps to avoid a collision; and if the plaintiff was on the track, and he saw the vehicle after she had driven on the track a sufficient length of time to enable him to stop his car, and to give her notice or time to get off the track before colliding with her vehicle, but negligently and carelessly permitted his car to go forward in the belief that she would get off the track before the collision would occur, and as the result of such conduct upon his part the collision did occur, and plaintiff was injured, then she is entitled to recover.*

"The court tells you that negligence is the failure to do what a reasonably prudent person would ordinarily have done under the circumstances of the situation, or doing what a person of ordinary care, under the existing circumstances, would not have done. Nor can you assume, gentlemen, even if you find that the collision was the result of defendant's negligence, that plaintiff was injured. In order to recover, the burden of proof is upon her to show she was injured, and to what extent, in addition to defendant's negligence."

other hand, the jury were instructed, in substance, that if the motorman could have avoided the collision by the exercise of proper care and diligence in the management of his car after the danger of a collision became manifest, and he failed to do so, then the plaintiff could recover.

These were as specific instructions as could or ought to have been given, in view of all the circumstances of the case and the conflicting character of the testimony. They left the jury to judge as they thought proper of the conduct of the respective parties. Besides, the instructions were addressed to a jury who were familiar with the manner in which persons usually drive along the streets of large cities, and with the manner in which street cars are usually operated therein, and who for that reason were perhaps better qualified than the trial judge to decide intelligently concerning what was done and what ought to have been done by the respective parties to the transaction, and how, in the exercise of ordinary care, they should have acted. As the case was one, therefore, which called for the exercise of that knowledge which laymen acquire in the course of their daily experience, it was peculiarly a case for the jury; and a court ought to be very certain that an error was committed which was prejudicial to the party against whom the verdict was rendered, before it sets the verdict aside.

Counsel for the plaintiff in error criticise two excerpts from the charge, and only two, which we have italicized below, and assert that they embody erroneous propositions of law, which must perforce have misled the jury. These excerpts from the charge were framed, we think, by the trial judge, upon the theory that there was evidence in the case from which the jury might reasonably conclude that the motorman was aware of the vehicle being on the east track in front of him for such a length of time before the collision occurred that he ought to have taken the precaution to bring his car so far under control before it was too late that he could easily stop it if need be. These paragraphs of the charge were conceived, we think, upon the assumption that the jury might discredit the motorman's statement concerning the speed of his car, and the direction from which the plaintiff drove upon the track. They do not seem to have been framed with a view of declaring the law in case the jury credited the statement of the motorman that the plaintiff drove on the track from the west, immediately in front of his car, but rather with a view of defining the motorman's duty in case the other theory was adopted, that the plaintiff turned onto the track from the east, and that the car was moving at an excessive rate of speed. And upon the assumption, on which the learned trial judge seems to have acted in framing these excerpts from the charge, we think that he was fully justified by the evidence in giving the jury such directions as they contain. The motorman admitted that he saw the surrey when it was 400 feet distant. He seems to have been well aware that there was a mud hole on the east side of the track, on which side, following the rule of the road, those in the surrey would naturally drive. He could hardly expect them to turn out at once into this mudhole to permit him to pass the surrey, the surrey being near the north end of it, nor was

the plaintiff required to do so. And as the motorman was running his car light, with no passengers, and with a view of turning in for the night, the jury may have concluded that his car was moving at a rapid pace. In view of this testimony, and all the conclusions of fact that a jury might draw therefrom, it was proper to advise the jury that the motorman was not entitled to speculate or take the chances of the vehicle getting off the track before he overtook it, and that the law cast on him the duty of exercising a degree of care and vigilance commensurate with the situation. If he saw this vehicle 400 feet in advance of him on the east track, as the jury may have concluded that he did see it, and knew that it was opposite to a mudhole, and if he was running his car very rapidly, as the jury may have concluded that he was doing, it was his duty to have slackened the speed of his car and brought it under such control as to forestall a possible collision.

In this connection it should be observed that the rules of law which prescribe the duties and liabilities of those who go on the track of a steam railroad at other places than street crossings have little, if any, application to those who go upon the track of a street railway. The former are trespassers, while the latter are not. One who has occasion to drive upon a public thoroughfare wherein a street railway track is laid at grade has the right to use any part of the street which he finds it necessary or convenient to use. He may drive along a street railway track, if occasion exists for so doing, the only limitation upon his rights in this respect being that he must not unnecessarily obstruct the movement of street cars; and, being free to move, he must turn off the track as soon as he can conveniently, if he sees a car approaching, and he must also be on the lookout at all times for cars. On the other hand, companies who operate street cars in the public streets owe certain duties to the public that are equally imperative. Those persons whom they place in charge of their cars must be on the lookout for vehicles and pedestrians who may be expected to be found traveling on the street, and who have an equal right with the railway company to use the street. They must take all reasonable and proper precautions to avoid running over pedestrians or into vehicles, and must not move at such a high rate of speed as will endanger the lives of others and imperil the safety of their own passengers. In other words, a motorman in charge of a car has no right to act on the assumption that he is entitled to a clear track at all times and that pedestrians and vehicles are bound, at their peril, no matter what may be the inconvenience, to get out of the way. In short, a motorman is under the same obligation to exercise care and prudence, so as to avoid collisions and to avoid injuring people, as these are to exercise care not to get in the way of street cars, so as to be run over and injured. Winters v. Kansas City Cable Ry. Co., 99 Mo. 509, 517, 12 S. W. 652, 6 L. R. A. 536, 17 Am. St. Rep. 591; Robinson v. Louisville Ry. Co., 50 C. C. A. 357, 112 Fed. 484; Cincinnati Street Ry. Co. v. Whitcomb, 14 C. C. A. 183, 66 Fed. 915; La Pontney v. Cartage Co., 116 Mich. 514, 74 N. W. 712; Flannagan v. St. Paul Street Railway Co., 68 Minn. 300, 301, 71 N. W. 379; Driscoll v. West End Street Ry. Co., 159 Mass. 142, 34 N. E. 171; Cooke v. Baltimore Traction

Co., 80 Md. 551, 31 Atl. 327; Hays v. Tacoma Ry. & Power Co. (C. C.) 106 Fed. 48, and cases cited.

We conclude, therefore, that if the jury found, as they may well have done, that the motorman saw this surrey on the east track, directly in front of him, when he was 400 feet distant; that he was at the time running his car at a high rate of speed, and was acquainted with the condition of the street opposite the point where the plaintiff was driving—then they might well have concluded that the motorman was guilty of culpable negligence in not arresting the speed of his car to some extent, so as to prevent a possible collision. The jury were the exclusive judges of what he ought to have done under the circumstances aforesaid, and the admonition of the court that the motorman had no right "to speculate or experiment as to whether the vehicle [would] get off the track before his car [struck] it," or to take the chances of the plaintiff getting out of the way—was not out of place or misleading. The court did not undertake to tell the jury when there "was an appearance of danger," but left the jury to determine that question in the light of all the facts and circumstances of the case, as it was their right and duty to do.

Complaint is also made because the trial court refused some of defendant's requests for instructions, and we are asked to reverse the judgment for that reason; but an examination of these instructions, and a comparison of the same with the court's charge, satisfies us that the principles of law therein declared, in so far as they were correct, were embodied substantially in the court's charge. And it is too well settled to require any citations of authority that in such cases a refusal to embody a rule of law in the precise language chosen by counsel affords no ground for a reversal. A court is never required to give an instruction prepared by counsel, no matter how correct it may be in the abstract, if the same principle, or substantially the same principle, had been enunciated in its charge, though in different language.

Upon the whole, we conclude that the case was properly tried below, and that no errors are disclosed by the record which would warrant a reversal. The judgment is accordingly affirmed.

SANBORN, Circuit Judge (dissenting). After as careful an examination of the record and rulings in this case as I have been able to make, my mind has been forced to the conclusion that the trial below was unfair, and that some of the rulings of the court were erroneous. I have reached this conclusion (1) because the court refused to instruct the jury that the evidence of contributory negligence was conclusive, and entitled the defendant to the verdict; (2) because the court charged the jury that the plaintiff could recover, although her negligence directly contributed to the injury, if the negligence of the defendant also contributed to it, when the law is the converse of this proposition; and (3) because the court charged the jury that if "the motorman operating defendant's motor car saw, or by the exercise of ordinary care might have seen, said vehicle upon the track a sufficient length of time before the collision occurred, as that by the exercise of ordinary care he could have avoided the collision, it was his duty to have done

so, and if you find he did not, and the plaintiff was injured as the direct result of such negligence and failure on his part, then she is entitled to recover. Nor does the law permit the defendant's motorman to speculate or experiment as to whether the vehicle can get off the track before his car strikes it"—and it refused the charge, as requested by counsel for the defendant, that "the plaintiff, when she saw the car approaching, or was advised by her companion that it was approaching, was in duty bound to turn from the track in ample time to avoid collision; and if she speculated upon the chances, and remained upon the track longer than was safe or necessary, when she might have driven out of it, and out of all danger to herself and her companions, then she was guilty of negligence in remaining upon the track so long as she did."

1. Conceding that the plaintiff drove upon the track from the east side, as she testified, conceding that the motorman was guilty of negligence, and conceding that every other fact and circumstance was as the plaintiff and her witnesses testified, these facts remained unquestioned: The plaintiff and her sisters drove upon the car track to avoid some mud in the driveway east of the track, which was neither impassable nor dangerous. When they passed upon the track, they could see for a distance behind them of at least 800 feet. It was a dark evening. When the car came upon the street upon which they were driving, it was more than 800 feet behind them, and it bore a bright headlight, which they could and did see, while the motorman could not and did not see their buggy until he came within about 400 feet of it. They saw the headlight. They knew that it was the light of an approaching car, and that neither they nor any other person could tell the distance or the speed of the car, and the light it carried, from a view of it in the dark. The motorman could not turn the car from the track, and both parties knew that fact. The plaintiff could drive her surrey off the track into the mud without any danger, and both parties knew and acted in view of that well-known fact. The plaintiff and her sisters knew that the car was approaching when it was more than 800 feet from them, and that its collision with them was inevitable unless they drove from the track before it reached them or the car was stopped. To them, therefore, came the first notice of the peril, the danger, because they saw the headlight of the car before the motorman saw the surrey. Upon them the first and primary duty to avoid the accident was imposed, because the motorman could not turn his vehicle, and they could drive their vehicle from the track; because it was their legal duty to do so, and to avoid the collision; because the motorman had the right to presume that they would discharge that duty; and because they had the first notice of the danger. McCann v. N. Y. & Q. C. Ry. Co., 56 App. Div. 419, 421, 67 N. Y. Supp. 748; Holwerson v. St. Louis & Suburban Ry. Co., 157 Mo. 216, 227, 57 S. W. 770; Morrissey v. Bridgeport Traction Co., 68 Conn. 215, 35 Atl. 1126; Lockwood v. Belle City St. Ry. Co. (Wis.) 65 N. W. 866; McClellan v. Chippewa Valley Electric Ry. Co. (Wis.) 85 N. W. 1018, 1019. This duty was imposed upon the occupants of the surrey the moment they saw the approaching headlight, and consequently knew the danger, and it continued to be

until the accident occurred. How did they discharge this duty? They never discharged it at all, but simply neglected to do so, and voluntarily took the chance that the car might run too slowly to hit them, or the motorman might stop it before it reached them. They testified that they first saw the headlight when they had driven about 60 feet upon the track; that they knew it was the headlight of a coming car, and they could not tell its speed or distance by looking at it; that they watched it all the time until the car struck them; that after they saw it they continued to drive along the track upon a slow trot for a distance of 75 or 100 feet, and then for the first time tried to drive off the track, and at the same time screamed to the motorman to stop. There is no doubt or dispute about these facts, and to my mind they present a clear case of contributory negligence, which was the primary cause of the accident. It was certainly the duty of the plaintiff to drive from the track as soon as she knew that a car was coming, whose distance and speed she could not know. It was her duty to do this every instant of the time after the approaching car and the danger it threatened were first discovered. It was her failure to discharge this duty, her negligence, that not only contributed to cause the accident, but was the primary, moving cause of it. If she had not been guilty of this negligence—if she had driven from the track at the time she first learned that the car and its inevitable danger were approaching, or at any time after that while she was driving the 75 or 100 feet which she subsequently traversed along the track—the accident could not have occurred. Nor does the fact, if it is a fact, that the motorman was negligent after he discovered the danger, condone or modify the fatal effect of this negligence of the plaintiff, because his negligence after discovery of the peril is met by the fact that after the plaintiff discovered the peril she was first and continually guilty of the negligence which was the primary and effective cause of the injury. Conceding all the negligence charged upon the defendant, the case is one in which each of two parties who owed relative duties to each other neglected his own duty, and relied upon the faithful discharge by the other party of his duty, so that the negligence of each directly contributed to cause the injury that resulted. In such a case it is always the duty of the court to instruct the jury that there can be no recovery. Clark v. Zarniko, 45 C. C. A. 494, 496, 106 Fed. 607, 608, and cases there cited.

2. It is a familiar principle of law that one whose negligence is one of the proximate causes of his injury cannot recover damages of another, even though the negligence of the latter also contributed to it. The question in such a case is not whose negligence was the proximate cause of the injury, but it is, did the negligence of the plaintiff directly contribute to it? If it did, that negligence is fatal to his recovery, and the negligence of the defendant does not excuse it. Pyle v. Clark, 25 C. C. A. 190, 192, 79 Fed. 744, 746, 747; Motey v. Granite Co., 20 C. C. A. 366, 369, 74 Fed. 156, 159; Chicago & N. W. Ry. Co. v. Davis, 3 C. C. A. 429, 431, 53 Fed. 61, 63; Railway Co. v. Moseley, 6 C. C. A. 641, 643, 646, 57 Fed. 921–923, 925; Reynolds v. Railway Co., 16 C. C. A. 435, 69 Fed. 808, 811, 29 L. R. A. 695; Schofield v. Railway Co., 114 U. S. 615, 618, 5 Sup. Ct. 1125, 29 L. Ed. 224; Railroad Co. v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542; Hay-

121 F.—18

den v. Railway Co., 124 Mo. 566, 573, 28 S. W. 74; Wilcox v. Railway Co., 39 N. Y. 358, 100 Am. Dec. 440.

The charge of the court was that the converse of this proposition was the law of this case. It was, in effect, that the negligence of a plaintiff which directly contributed to cause the injury was no defense to a recovery if the negligence of the defendant also contributed to it. The court treated of this subject in four places in the charge: First, when discussing the theory of the defendant that the plaintiff drove upon the track from the west side, it said: If the plaintiff "negligently drove across the track in front of the defendant's car, which was running on the east track in the same direction and so close thereto as that the motorman in charge thereof, in the exercise of proper care and diligence, with the means and contrivances at hand, could not stop the car until the collision had occurred, then the plaintiff cannot recover." This was a charge that if the defendant was guilty of no negligence whatever, and the plaintiff's negligence was the sole cause of the injury, she could not recover. In the second place, the court, in treating of this entry upon the west side of the track, said that if plaintiff "drove her vehicle across the track in front of defendant's car, yet if you further find from the evidence that defendant's motorman, by the exercise of proper care and vigilance, could have avoided the injury by stopping his car upon the first appearance of danger, and before the collision occurred, and negligently and carelessly failed to do so, then the plaintiff should recover." That is to say, no matter how negligent the plaintiff was, yet, if the defendant was guilty of any negligence whatever—if the motorman could have avoided the injury by the exercise of even a reasonable degree of care—then the plaintiff could recover. His third charge upon the subject was when treating of the theory that the plaintiff entered the track upon the east side, and he closed that charge with these words:

"So that if, from all the evidence, you find that the plaintiff, while driving along the east side of the track in order to avoid the water and mud, as before stated, failed to exercise such care and diligence as I have just indicated, and by reason of such failure and negligence directly contributed to the injury complained of, then your verdict should be for the company, unless you further find from the evidence that the defendant's motorman, by the exercise of proper care and vigilance, could have avoided the collision by stopping his car, but negligently failed to do so, in which event the plaintiff should recover."

This is a plain and clear statement that, if the motorman of the defendant was guilty of any want of care or vigilance whatever, the plaintiff could recover, notwithstanding the fact that the jury found that the plaintiff was guilty of negligence that directly contributed to the injury. The fourth and last place in which the court discussed this question sums up the instruction to the jury upon this subject in these words:

"Hence, although you may believe from the evidence that plaintiff was negligent in driving the vehicle upon and along the defendant's railway track, yet if you further believe from the evidence that after she had driven her said vehicle upon the track the motorman operating defendant's motor car saw, or by the exercise of ordinary care might have seen, said vehicle upon the track a sufficient length of time before the collision occurred, as that by

the exercise of ordinary care he could have avoided the collision, it was his duty to have done so; and if you find he did not, and the plaintiff was injured as the direct result of such negligence and failure on his part, then she is entitled to recover."

This is a declaration that however careless, however negligent or reckless, the plaintiff may have been, yet if the motorman could, by the exercise of ordinary care, have seen the carriage and have avoided the collision, his negligence was fatal to the defendant, and the plaintiff could recover, notwithstanding her contributory negligence.

The rule given by the court in this case in these four excerpts from the charge is not modified or contradicted by any part of the instructions. It is, in effect, as a careful reading of it will demonstrate, that a street car company is liable for damages resulting to any one driving upon its tracks in every case in which the motorman could, by the exercise of ordinary care, see the carriage and stop the car before the collision, although the party driving upon the track in front of him may have been guilty of culpable negligence which was the direct and primary cause of the accident. This seems to me to be the direct converse of the law of contributory negligence which is sustained by the authorities and is thought to be consonant with reason.

Counsel for the defendant requested, and the court refused to give, the following instruction, which, in my opinion, correctly states the law upon this subject:

"The motorman in charge of the car had a right to assume that the plaintiff, while driving upon the track in the same direction in which the car was moving, would from time to time look back to ascertain whether a car was approaching, and would turn from the track in time to enable the car to pass without being delayed in its progress; and the motorman was under no legal duty to stop or check his car until he saw that the plaintiff was not going to turn from the track, or that the plaintiff could not turn from the track; and if the plaintiff knew that the car was approaching, and did not turn out to allow it to pass, and the motorman failed to observe that she was not going to turn off the track in time to avoid collision, and these acts of plaintiff and of the motorman concurred in causing the injury complained of, and the act of neither without the act of the other would have caused the injuries, then the plaintiff cannot recover, and the verdict must be for the defendant."

Morrissey v. Bridgeport Traction Co., 68 Conn. 215, 35 Atl. 1126; McClellan v. Chippewa Valley Elec. Ry. Co. (Wis.) 85 N. W. 1018; McCann v. New York & Q. C. Ry. Co., 56 App. Div. 419, 67 N. Y. Supp. 748; Winter v. Crosstown St. Ry. Co. (Super. Buff.) 28 N. Y. Supp. 695, 5 Am. El. Cas. 515; Vogts v. Metropolitan St. Ry. Co., 36 Misc. Rep. 799, 74 N. Y. Supp. 844; Smith v. Crescent City Ry. Co., 47 La. Ann. 833, 17 South. 302.

3. The court refused to give the charge quoted in the earlier part of this opinion, to the effect that the plaintiff, when she saw the car approaching, was in duty bound to turn from the track in time to avoid the collision; that if she speculated upon the chances, and remained upon the track longer than was safe or necessary, when she might have driven out of all danger, then she was guilty of negligence in remaining upon the track as long as she did. This was, in my opinion, a correct statement of the law, and the court should have given it to the jury. McCann v. N. Y. & Q. C. Ry. Co., 56 App. Div. 419, 67 N. Y. Supp. 748. The court charged the jury:

"Nor does the law permit the defendant's motorman to speculate or experiment as to whether the vehicle can get off the track before his car strikes it. On the contrary, at the first appearance of danger it is his duty to take the necessary steps to avoid a collision."

But it refused to charge that if the plaintiff speculated upon the chances, and remained upon the track longer than was safe or necessary, when she might have driven off of it, she was guilty of negligence in so doing. The first duty when the approaching car was discovered by the plaintiff, and the advancing surrey was discovered by the motorman, was upon the plaintiff. It was her duty to drive off the track. The motorman had the right to presume that she would do so until it became apparent that she could not or would not take her vehicle from the railway. She had no more right to speculate upon the chances, and remain upon the track longer than was safe or necessary, nay, she had not as much right, as the motorman, because she could drive her vehicle from the track, and he could not remove his from the railway. It was consequently error, in my opinion, for the court to refuse to instruct the jury that speculating upon the chances, and remaining upon the track longer than was safe or necessary, was negligence on the part of the plaintiff.

The entire trial seems to me to have been conducted under the erroneous view that no negligence of the plaintiff, no matter how culpable or causal, could constitute any defense to the action, if the negligence of the defendant in any way contributed to it. The rule which permeates the charge, and which was given to the jury at least four times in the course of it, is that the plaintiff may not recover if her negligence is the sole cause of the injury, but that, if the negligence of the defendant concurs and contributes with her negligence to cause the injury, she may recover. The true rule is that the plaintiff may not recover in any case in which his own negligence and the negligence of the defendant each directly contribute to produce the damage for which the suit is brought. It was this error in the theory of the trial that in my opinion induced the erroneous rulings to which attention has been called, and prevented the defendant, as it seems to me, from securing a fair trial of its case.