## Dorsey *versus* Abrams *et al.*

1. Where upon the face of a check it is apparent that it was not drawn in the usual course of business, that it was not a commercial check, a cashier has no authority to certify such a check, and such certificate is not binding upon the bank, nor can it be made so by any subsequent acts of ratification by said cashier.

2. A check contained this recital: "To hold as collateral for 1000 P. T. oil, pipage paid," &c., and across its face the cashier of the bank certified "Good when properly endorsed." *Held,* that this check was not drawn in the usual course of banking business and the certificate of the cashier would not bind the bank.

October 19th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Clarion county:* Of October and November Term 1877, No. 138.

Assumpsit by Patrick Dorsey against William M. Abrams and others, trading as the Citizens' Saving Bank, on a check, a copy of which will be found in the opinion of this court.

Demand was made for the payment of this check on the 10th of January 1876, which was refused. At the trial before Jenks, P. J., there was evidence to show that the certificate of Mr. Foster was a forgery, and also that by his subsequent acts and declarations, he had recognised and confirmed his certificate.

It was also in evidence that Foster had, at other times, certified checks; but it did not appear that they were other than ordinary checks received in the usual course of business.

It was admitted that when McCullough drew the check he had no funds in the bank, and no right to draw.

Among the points submitted by plaintiff were two which embraced substantially these propositions: First, that if Foster ratified the endorsement of the check, such act would amount to an acceptance of the check, and plaintiff is entitled to recover; and, second, if the jury believe, from the evidence in the case, that the managers of the bank had knowledge that Foster, their cashier was certifying checks for their customers to give such custom

[Dorsey *v.* Abrams.]

credit in the oil market, and did not promptly repudiate such act, they would be bound by such certificate, whether the act was within the scope of the cashier's authority or not.

Both of these points the court refused.

Two of defendant's points were as follows:—

1. That as there is no sufficient evidence that the cashier of the bank had authority to accept a draft as security for the oil to be delivered, the plaintiff cannot recover; and

2. That under all the evidence in the case the plaintiff cannot recover; which the court answered, in their general charge, as follows:—

" The certification of a check written out would contain a statement that the drawer had funds sufficient to meet it in the bank, applicable to its payment, and an agreement on behalf of the bank that these funds should be retained and paid upon the check whenever it was presented. The cashier has a right, by virtue of his office, to make this certificate when the drawer has funds: Cooke *v.* The Bank, 52 N. Y. 96. [Even if the drawer had no funds we apprehend that the certificate of the cashier would hold the bank when the transaction was within the range of its legitimate business, but the acts of the cashier, or other officer of the bank, only bind the stockholders when such acts are within the regular and just sphere of banking transactions: Lloyd *v.* West Branch Bank, 3 Harris 172. We do not think this transaction within such a sphere. The certificate of the cashier upon the paper upon which suit has been brought would not, therefore, bind the stockholders, without proof that they authorized him to make such certificate, or without proof of such usage and practice on the part of the cashier as would justify third persons in believing that such usage was authorized.] Plaintiff having failed in proving such authority or usage, we answer defendants' second point in the affirmative. We also answer defendants'·seventh point in the affirmative. As this disposes of the case, further answer to points of either plaintiff or defendants is unnecessary.

The verdict was for the defendants, and, after judgment, plaintiff took this writ, assigning for error the portion of the charge noted in brackets and the refusal of his points.

*Corbett & Clark* and *Knox & Moffett*, for plaintiff in error.— Such a certificate as here made by the cashier, when the maker has no funds in the bank, is an act which merely transcends his authority as against his co-partners, but being within the general scope of his business, binds the partnership in favor of third persons transacting business with said bank: Lloyd *v.* The West Branch Bank, 3 Harris 172. The holder of a check so certified, "good," stands in the same position to the bank as the original depositor: Girard Bank *v.* Bank of Penn Township, 3 Wright 98. If the cashier ratified the transaction after it was done without his

[Dorsey *v.* Abrams.]

authority, it would have the same effect as if done by his authority : 1 Parsons on Notes and Bills 101. And when so done would be an absolute engagement to pay the money to the holder of the check : Rayborg *v.* Peyton, 2 Wheat. 386. The evidence of ratification should have been permitted to go to the jury : Rees *v.* Jackson, 14 P. F. Smith 486.

*James Campbell, Wilson & Jenks* and *David Lawson,* for defendants in error.—The bank gave the cashier no authority to accept oil certificates, nor is the check in the usual course of business for the payment of money. The bank never had any interest in the check. They had no money of the maker to meet any checks he might draw, and Foster's certificate was, therefore, simply his undertaking to pay the debt of another, which was clearly not within the scope of his functions as cashier : Parke *v.* Smith, 4 W. & S. 289 ; Sutton *v.* Irwine, 12 S. & R. 13.

Mr. Justice PAXSON delivered the opinion of the court, November 19th 1877.

This was a suit brought against the defendants, an unincorporated banking association, to recover the amount of a check held by the plaintiff, a copy of which is here given :—

" No.                                    EAST BRADY, Pa., Dec. 30, 1875.
      Citizens' Savings Bank, East Brady, Pa., pay to P. Dorsey, Esq., or order, two thousand dollars.
To hold as collateral for 1000 P. T. ⎱
oil, pipage paid to Jan. 4, 1876.    ⎰  A. W. McCULLOUGH.
      Good when properly endorsed.
                              J. Y. FOSTER.
Endorsement on back of check,          P. DORSEY."

The J. Y. Foster who certified the check is the cashier of the defendants' bank. It was alleged upon the trial, and there is evidence tending to prove, that the certificate of Mr. Foster was a forgery. The plaintiff contended that if a forgery, Mr. Foster had recognised and confirmed it by his subsequent acts and declarations. We do not regard the question of the alleged forgery as an important element in the discussion of the case. It was conceded that at the time McCullough drew the check upon the bank, he had no funds there and no right to draw. It is also apparent that the check was entirely out of the usual course of banking business. This is plain from the face of the instrument. Instead of being a mere order upon a bank to pay a certain sum of money to a person therein designated, or to bearer, it has the significant endorsement in one corner, " to hold as collateral for 1000 P. T. oil," &c. This indicates plainly that the check was given merely as collateral security for the delivery of the oil. If any

[Dorsey *v.* Abrams.]

doubt could exist upon this point it is put at rest by the testimony of Dorsey (plaintiff) himself. He says: "The first check was given for borrowed oil; if the oil was not returned the check was to be paid; that check was carried for thirty days; supposed it was all right and not forged; the second check was taken when oil was advancing, and I would not extend the check without he would give me a check which would secure me for the return of the oil." If the certificate of Foster that the check was "good when properly endorsed" is to bind the bank, then the cashier has made the bank security for the delivery of 2000 barrels of oil. This he could not do without authority. It is an act entirely outside of any of the ordinary, recognised duties of the cashier of a bank. There is not a word in the evidence to show that the defendants or any of them knew of this transaction, much less sanctioned it. An attempt was made to show a similar course of dealings by the bank as to prior transactions, that is to say, to certify checks drawn without funds, to be held as collateral for oil. It was not successful, however. The checks certified were what the witnesses call "straight checks," by which we understand commercial checks for the payment of money free from clog or condition. As to such checks it is not perhaps outside of the line of a cashier's duties to certify them when requested, and the drawer has the funds in the bank. It has been decided that he has a right to make such a certificate by virtue of his office: Cooke *v.* The Bank, 52 N. Y. 96. The effect of such a certificate we need not discuss, as the question is not before us. Nor need we consider at length the proposition that the plaintiff was a bona fide holder for value. The face of the check was notice that it was not drawn in the usual course of business; that it was not a commercial check. The plaintiff's own testimony shows, as we have seen, that he was to hold it only as security for the oil. He had no right to draw the money upon the check until default in the delivery of the oil. There was ample to put him upon inquiry as to the authority of the cashier.

We are of opinion that the learned judge of the court below was entirely accurate in his rulings embraced in the first assignment. This practically disposes of the case. We may say, however, in regard to the fifth assignment, that the point referred to was not based upon any evidence in the cause. There was no error therefore in declining to answer.                    Judgment affirmed.