McDOWELL, District Judge, dissents.

---

## ST. LOUIS, K. C. & C. R. CO. v. CONWAY.

(Circuit Court of Appeals, Eighth Circuit. September 2, 1907.)

No. 2,546.

1. MASTER AND SERVANT—INJURY OF RAILROAD EMPLOYÉ—FAILURE OF COMPANY TO PRESCRIBE RULES.

The failure of a railroad company to prescribe signals and rules for the movement of two engines when coupled together does not constitute negligence which will give an employé injured during such a movement a right of recovery therefor, where it did not appear that any occasion had ever arisen showing the necessity or importance of any such rules, and where, moreover, the employé when injured was in a place where he had no right to be and no right to rules for his protection there.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 283.]

2. SAME—ACTIONABLE NEGLIGENCE.

An act, which caused an injury to another not foreseen, and which could not reasonably have been anticipated, does not give a right of recovery for such injury on the ground of negligence; and a railroad company cannot be held liable for an injury to a brakeman who was riding on the pilot of the first of two engines coupled together, where he had no right to be, conceding, as claimed, that it was caused by the act of the engineer of the rear engine in starting his engine suddenly and causing it to jar the one in front; such engineer having no knowledge of the brakeman's position on the pilot.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 163.]

3. SAME—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF DANGEROUS POSITION.

Plaintiff, an experienced brakeman, who was directed by the conductor of a train to take charge of two engines coupled together, which were to proceed to a siding for switching purposes, at about the time the engines were given the signal to start, ran by them and jumped upon the pilot of the front engine, from which he fell, or was thrown, receiving an injury. The pilot was provided with no place for a person to stand or where he could stand safely, and was not intended to be used for that purpose, but the engines were provided with steps with handholds, on which plaintiff could have safely stood, or by means of which he could have entered the cab, and he passed by such steps in going to the pilot. Held, that the railroad company was not chargeable with negligence in not equipping the pilot with a footboard and grab irons to render it a safe place for plain-

tiff to ride, nor was it liable for his injury, which was caused, or at least contributed to, by his own negligence in unnecessarily assuming a dangerous position.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 706–709.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

W. F. Evans, for plaintiff in error.

Jesse H. Schaper (George W. Lubke and George W. Lubke, Jr., on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The defendant in error recoverd judgment in the sum of $6,000 against the plaintiff in error, a railroad corporation. As the chief insistence of the plaintiff in error is that the trial court erred in refusing its request for a directed verdict, a review of the case as presented by the evidence is necessary.

At the time of the injury, the defendant in error was employed as head brakeman on a construction train used in building a railroad for the plaintiff in error between St. Louis and Kansas City, Mo. He had been so employed for several months prior to the injury hereafter described, and was a brakeman of long experience, familiar with the duties incident to his employment. On the morning he received his injury, the construction train was at Bowen, three miles west of the town of Windsor, in Henry county, Mo., a station on said road. The train consisted of a large number of freight cars and two engines coupled together. The front engine is known in the evidence as No. 623; the rear engine as No. 462. From Bowen to Windsor the train was pushed by said engines. The ground was very wet and muddy, and, as the track was new and unsettled, the upward and downward motion of the cars caused them to jump out of the knuckle of the automatic couplers, whereby the cars would become detached. This became so annoying, occasioning frequent stops, that the conductor in charge sent to the caboose for links and pins, used on the drawheads, and substituted them in place of the automatic couplers, which change remedied the trouble. The defendant in error was present when this substitution of the link and pin couplings was made, and was fully cognizant thereof. When the train arrived at Windsor, the defendant in error detached the locomotives and tenders from the train of cars, for the purpose of running the engines about 300 feet to a siding for the purpose of shifting cars. The direction and control of this movement of the engines were, as customary, by the conductor committed to the charge of the defendant in error, as the head brakeman. He undertook to ride on the pilot to the point of destination, from which he fell. His left foot was so crushed by being run over by the pony wheel of the engine as, in the judgment of the surgeon, to render its amputation necessary.

The negligence imputed by the petition to the plaintiff in error as grounds for recovery of damages is: (1) The failure of the plaintiff in error to promulgate rules "for the accomplishment of the work of coupling said engine No. 623 onto said cars and switching the latter from the main track to and upon said side track by means of said two engines coupled together by means of said link and pin and adjusted in the manner aforesaid, by which system of signals and rules said various servants and employés of defendant should be governed, and by the use of which one employé could protect and guard himself against the action of another." (2) That the act of connecting engine 462 with 623 by means of said link and pin, and in causing said engine 462 to suddenly move forward and violently strike engine 623 "while the same was also moving forward, while the defendant in error was so situated upon the pilot." And further was the plaintiff in error guilty of negligence "in causing said engines while so connected to suddenly move forward," while the defendant in error was so situated on said pilot. (3) In failing to provide and furnish the defendant in error at the time and place with reasonably safe appliances at and about said engine No. 623, such as grab iron and footboard, for the defendant in error to do his work.

The answer tendered the general issue of nonliability, and pleaded contributory negligence. One of the defenses made under the general issue was that the train of cars and engines in question, at the time of the accident, were being used by an independent contractor doing the construction work of said road, and that the defendant in error was at said time in the employ of said contractor, and not that of the railroad company. And error is assigned of the action of the trial court in refusing to submit to the jury the question of fact as to whether or not the defendant in error was so in the employ of said contractor; the contention being that there was sufficient evidence to carry the question to the jury. In view, however, of the conclusion reached by us on the merits of the claim for damages, it is not deemed essential to consider this assignment of error.

Turning to the acts of imputed negligence, we are unable to perceive the legal basis for the claim that the railroad company failed of its duty to this employé in not prescribing signals and rules for the movement, at the time and place, of the engines when their movement was turned over to him. He knew that no such rule had been promulgated, and the evidence fails to disclose that any occasion had ever arisen to render such prescription important, much less necessary. As the company was using in its regular operation of its trains the required automatic coupler, it could not be expected that it should anticipate the emergency which required, for the instant, the substitution of the link and pin. From the very necessities of the case, when such unusual and unexpected emergency arises out on the road, there must be left to the best judgment of experienced operatives the method of overcoming the obstacle. Rules and regulations of a railroad company are the offspring of experience, formulated as new conditions dictate their expediency or necessity. If, as the testimony of the defendant in error himself shows, it was customary for the front engi-

neer, when two engines coupled together were to make the movement in question, to apply the motive power, why was it necessary for the railroad management to prescribe a rule to that effect? And if, perchance, the two engineers receiving the signal for a forward movement, the rear engineer should on a particular occasion let on steam to put his engine in motion, why should the company make a rule about it to protect an employé like the defendant perched upon the pilot, where he had no right to be, and where the company in constructing it did not intend or contemplate he should be? What this complainant stood in need of to support his action was that there should have been such a rule which he could claim to have been violated, the absence of which leaves him without a cause of action.

The second ground of recovery is equally meritless. Yielding to the action of the jury in discrediting the positive testimony of both engineers and the fireman that the automatic coupler between the two engines was not changed by the substitution of the link and pin, and accepting the testimony of the interested suitor, there are several sufficient answers to his claim based thereon: (1) Under the circumstances of the change, made to obviate the constant separation of the train because the knuckle of the automatic coupler by reason of the up and down motion of the cars on the soft, uneven roadbed would not hold them together, was not a negligent act of the conductor. On the contrary, it was commendable judgment. (2) The defendant was present when the change was made, and, according to his testimony, he knew the two engines were coupled together in that manner when he undertook to ride on the pilot. (3) He testified as an expert that the slack between the engines was greater when coupled with the link and pin than when coupled with the automatic appliance. He also knew when he unnecessarily undertook to ride on the pilot that by reason of that very slack the liability to jarring while the engines were in motion on such a roadbed were increased, and yet he voluntarily exposed himself to such hazard.

The engineer of the rear engine testified that he only gave steam sufficient to put his engine in motion in connection with its fellow engine, and that there was no impact with No. 623. The engineer and fireman of the front engine testified that there was no jar to their engine from such impact. The jury, however, must have been unwilling to credit the testimony of any number of witnesses who were employés of the railroad, except the one who was suing the company, for he alone asserted such violent jar. But if it be conceded that the rear engine did strike the front one with force sufficient to jar it, how does the fact give a cause of action for damages to this defendant in error? An injury which was not foreseen, and could not be reasonably anticipated as the probable result of an act of imputed negligence is not actionable. Hoag v. Railroad Company, 85 Pa. 299, 27 Am. Rep. 653; Railway Company v. Kellogg, 94 U. S. 475, 24 L. Ed. 256; Chicago, St. P., M. & O. Ry. Co. v. Elliott, 55 Fed. 949, 5 C. C. A. 347, 20 L. R. A. 582. The engineer of No. 462 did not know at the time that the defendant in error was perched on the pilot. In so far as the other employés of the company, who were at their proper places of duty, were concerned, the action of the rear engineer did not affect them.

They felt no jar. And if the defendant in error had been either in the cab, or on the steps leading thereto, where, as will hereafter appear, he could have stood, he would have escaped injury. Before he has any right in law to complain of having been wrongfully jarred from where he stood, it must first appear that he had a right to occupy such position at the time. It is like the instance of a man walking on a railroad track, where he has no right to be, and is run down by an approaching engine. Being where he had no right to be found, the railroad company is under no obligation to look out for him in such position. Only after the engineer, in the exercise of ordinary care, discovers the presence on the track of the trespasser, and that he is unheedful of danger, does the law hold him and the master liable for the injury; and then only if, after discovering the peril, the engineer should fail to exert every means reasonably in his power to avert the injury. The evidence fails to show that the engineer of No. 462 had any knowledge of the position of the defendant in error on the pilot. More than that, the conductor, introduced as a witness on behalf of the defendant in error, who thereby vouched for his veracity and credibility, testified that when he gave directions to the defendant in error to take charge of the movement of the engines he stood opposite to or near engine 462, and gave the signal, meaning "Let her go." That while the defendant in error was going toward the front engine, both engines were in motion. As the conductor immediately turned his back to walk away, he did not see the accident. The rear engineer testified that, when the defendant in error passed by his engine going to the front, he was running, and both engines were then in motion. The engineer of No. 623 also testified that after he got the signal to start, and while both engines were moving, the defendant in error passed his engine in a run and jumped on the pilot, when his foot slipped, and he fell with his left foot under the pony wheel of his engine. But, as all these witnesses testified favorably to the railroad company, they were disbelieved by the jury; and they accepted the unsupported statement of the employé suing the company that he got on the pilot while the engine was standing still, and gave the signal to start before there was any movement of the engines. If jurors, against such overwhelming weight of evidence, may arbitrarily render a verdict, without the interference of the presiding judge, it tends to destroy intelligent and honest confidence in trials by jury.

The most remarkable contention advanced in support of this action is the charge of negligence on the part of the railroad company in not so equipping the pilot with a sufficient footboard and grab irons for the hands so as to make the pilot a safe place for him to ride. This would almost excite admiration for its audacious presumption, if it were not as ridiculous as absurd. He knew when he undertook to ride there that it was not prepared for the carriage of an employé; that it was necessarily dangerous without such safety appliances. With as much common sense and right might he have undertaken to ride on the drawhead between the engines, and after falling therefrom charge the railroad company with negligence in not erecting a footboard and grab irons there to make the place safe, protecting him against his foolhardy act. The pilot in question, commonly known as the "cow

catcher," was constructed and intended only to remove obstacles, such as cattle or other animate or inanimate objects, which might be encountered on the track. It is held in place by means of an iron rod extended from the bottom of the baseboard, inside the slats, upwards, where it is secured by bolt at the top. The only room for the support of a man's feet was between that iron bar and what is called the "heel" of the baseboard, not over three inches in dimension. It was on this narrow space the defendant undertook to stand, when, as his testimony showed, the sole of his shoe was four inches broad. As he thus stood on his left foot, immediately in front of said pony wheel of the engine, the only other support he had was the flag staff, about one and a half feet in length and about one inch in diameter. It was a little above and to the left of him, so that he had to extend his left hand somewhat backward to grasp it. He testified that when the jar of the engine came the flag staff turned in its socket, and he fell. This revolving of the flag staff was not caused by the impact of the rear engine, as the conductor testified it so revolved a short time prior to this accident when he had taken hold of it. The flag staff was not intended for any such use. Its sole purpose was to support a small signal flag.

Moreover, the evidence showed that the master had furnished a reasonably safe place for this employé to have ridden to the point of his destination. Just back of each of said engines, at the front of the tenders, on each side of them, were steps made for the purpose of entering the cabs of the engines. These steps were broad and long enough to safely stand upon with grab irons for the hands to hold to, so that the defendant in error with perfect ease could have gone into the cab, or stood on the step, supporting himself by the grab irons. He passed by and in full view of those steps in going to the pilot. He knew they were there, and that he could ride on them if he desired. To save walking 25 feet, when he should arrive at the point where he should dismount to throw the switch, he passed by the safe place furnished by the master and elected to take the hazard of standing on the narrow, insecure perch of the heel of the pilot.

Under such circumstances, the law is that the servant cannot hold the master responsible for the misfortune of an injury received while making use of machinery or appliances for a purpose neither designed nor contemplated by the master. Wood's M. & S. § 402; Bailey's Mas. Liab. 22; Shear. & R. Neg. 346; Jayne v. Sebewaing Coal Company, 108 Mich. 242, 65 N. W. 971; Galvin v. Old Col. Co., 162 Mass. 533, 39 N. E. 186; Kauffman v. Maier et al., 94 Cal. 269, 29 Pac. 481, 18 L. R. A. 124; Hamilton v. Railroad Company, 83 Ga. 346, 9 S. E. 670; Elgin, J. & E. Ry. Co. v. Docherty, 66 Ill. App. 17; Wilson v. Michigan C. R. Co., 94 Mich. 20, 53 N. W. 797.

With such reiteration that the necessity of repeating it almost excites impatience, the courts have asserted, and consistently held, that when the servant, of his own volition and for his own convenience, assumes a dangerous position, not intended by the master, in which to perform his work, he is without just complaint against the master if injury thus come to him. Railroad Company v. Jones, 95 U. S. 439, 24 L. Ed. 506; Burns v. Chronister Lumber Company (Tex. Civ. App.) 87 S. W. 163; Rucker v. Railway Co., 61 Tex. 499; Kresanowski v.

Railway Company (C. C.) 18 Fed. 229; Tower Lumber Company v. Brandvold, 141 Fed. 919, 73 C. C. A. 153.

In the latter case the servant unnecessarily sat on the end of the bunker, with his feet hanging down over the end, with nothing to support him except his hands pressed against the side of the bunker. Commenting on this, Judge Adams said:

> "The evidence in our opinion conclusively shows that he voluntarily and needlessly exposed himself to danger; that he took a position upon the logging car full of obvious peril. Any unusual jolt or mishap, in the nature of things and according to common experience of mankind, would have dislodged him from his perilous position and subjected him to injury."

This principle of law has been again asserted and applied under circumstances of comparative recklessness on the part of the servant in the more recent case of Crookston Lumber Company v. Boutin, 149 Fed. 680, 687, 79 C. C. A. 368.

Where, as in the case at bar, there was a reasonably safe place, on the steps leading to the cab of the engine, where the defendant in error could have ridden, quite accessible to him and convenient enough to his work, his selection of the pilot was positively reckless, and at his own risk. Chicago & N. W. Ry. Co. v. Davis, 53 Fed. 61, 63, 3 C. C. A. 420; Morris v. Duluth, etc., Railway Company, 108 Fed. 747, 749, 47 C. C. A. 661.

In Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 536, 63 C. C. A. 27, 34, with pungent applicability to this case, the court said:

> "Where there is a comparatively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is a want of ordinary care for him to select and use the more dangerous method. * * * He cannot recover, because his negligence contributed to the injury. * * * A brakeman carelessly jumps onto the brake beam of a moving car and seizes a handhold * * * when there are other handholds for the purpose of enabling him to climb upon the cars, which he ought to have used. * * * He cannot recover because his negligence directly contributed to his injury."

This ruling is recognized and enforced by the state court. Montgomery v. Chicago Great Western Railway Company, 109 Mo. App. 88–94, 83 S. W. 66; Moore v. Kansas City, Ft. Scott & Memphis Railway Co., 146 Mo. 572, 48 S. W. 487.

The defendant in error undertook to justify his selection of the pilot on which to ride by testifying that employés had been in the habit of so riding under similar circumstances. This excuse the law does not recognize. In Dawson v. Chicago, R. I. & P. Railway Company, 114 Fed. 870, loc. cit. 872, 52 C. C. A. 286, Judge Thayer, speaking for this court, said:

> "Conceding it to be true that brakemen sometimes take such risks without any sufficient cause or excuse, yet such acts should nevertheless be pronounced negligent. Such conduct on the part of brakemen and others ought, also, to be discouraged. If a man exposes himself to great risk unnecessarily, he is guilty of negligence, although it be shown that other persons have done the same thing and escaped unhurt. The inherent quality of an act is not changed, whether it is done by one or many."

Mr. Justice Swayne, in Railroad Company v. Jones, supra, speaking to the recklessness of undertaking to ride in a less perilous situation than did this defendant in error, said:

"He could have gone into the box car in as little, if not less, time than it took to climb to the pilot. The knowledge, assent, or direction of the company's agents as to what he did is immaterial. * * * As well might he have obeyed a suggestion to ride on the cow catcher, or put himself on the track before the advancing wheels of the locomotive. * * * He was not an infant nor non compos. * * * He was himself the author of his misfortune."

So, in Montgomery v. Railroad Company, supra, the court, speaking to a like contention made by the plaintiff, said:

"The evidence shows that switchmen as a rule frequently incur risks which seem almost incredible, but may be accounted for from the well-known fact that constant exposure to danger dulls the sense of caution and engenders recklessness. It seems to have been a theory of plaintiff that this recklessness upon the part of switchmen would relieve him from the imputation of negligence. But the courts cannot approve a custom so fraught with peril as an excuse for want of proper care. Such a rule would impose upon the master practically insurance and indemnity of his servant against his own wrongs."

It almost daily falls under the observation of those living in cities that impatient persons, rather than wait three or four seconds, will rush in front of approaching street cars, and cast the die upon the chance of clearing the front of the car, when a slip of the foot, or the striking of the toe against the rail, invite instant death. Such foolhardiness affords no justification either in law or common sense for its repetition.

Sound public policy, predicated of the interest the commonwealth has in the lives and limbs of its subjects, demands that the courts should reject such a claim for damages as this record presents.

The judgment of the Circuit Court is reversed, and the cause remanded, with directions to grant a new trial.