COMMONWEALTH STEEL CO. v. McCASH.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1911.)

No. 1,706.

MASTER AND SERVANT (§ 125*)—DEATH OF SERVANT—NEGLIGENCE.

Decedent, a marker in defendant's steel foundry, was killed by being struck by a heavy piece of steel broken from the body of a steel car body in process of manufacture. After the cars were molded in the process of manufacture, a mass of steel called a "gate" was attached to the body of the car, which was required to be removed by cutting or breaking. It was usual to break off this "gate" by means of a drop working somewhat like a pile driver; the appliances being so adjusted that, when the gate was broken off, it dropped in the soft sand below. Decedent, at the time he was killed, was at work some 25 or 30 feet from the drop, with his back toward the car body from which the gate was about to be broken, and while so engaged the gate, after being struck by the drop, was whirled through the air and struck deceased at the back of the head and neck, causing injuries from which he died. No such accident had ever happened before in the course of many years, and though nine witnesses testified, who had worked in the same business for years, none of them were able to tell how the accident occurred. Held insufficient to show actionable negligence, under the rule that there must be proved a danger, either known, or which by reasonable diligence could have been ascertained by defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Southern District of Illinois.

Action by William McCash, as administrator of Harry McCash, deceased, against the Commonwealth Steel Company. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

This is an action brought by the administrator of a young man who lost his life in the employ of the Commonwealth Steel Company, plaintiff in error. The question is whether the injury was negligent or accidental. The company has been for many years engaged in manufacturing car bodies for passenger cars, made of steel. They are molded, and then taken to the finishing department, in which the accident occurred. In molding these bodies the melted steel is conducted into the mold by means of so-called runs. These runs are somewhat in the shape of an elongated three-pronged pitchfork with the tines coming together where the molten steel is poured. The mold of the car body is filled up with this steel, and also the runs, so that, when the mass is cooled, there is firmly attached to one end of the car body the steel which was left in the run, and which is called a gate, which must be detached either by cutting or breaking. The gate is about 42 inches long and 2½ inches wide, weighing 180 pounds. The double body, with the gate attached, is taken up by a crane, in a large building, 125 feet by 300 feet, carried down the center of the building, and finally deposited on one side upon large blocks of iron or steel, so that, when the body is at rest, it is about 18 inches from the floor, and so adjusted that the end of the double body slightly projects beyond the edge of one of the steel blocks; the floor at this point being covered with sand. Over the gate there is employed what is called a "drop," working somewhat like a pile driver. A steel block, measuring 18 inches square at the base and about the same at the top, and 3 feet in length, is hung by a rope over the gate, so that it can be raised about 30 feet above the gate. The drop is worked by machinery.

The process of breaking off the gate is as follows: The steel block is suspended above it, and let down over it to obtain the proper position. Before this is done, however, the point of connection between the gate and steel body is weakened by chiseling, so that the gate may be broken squarely off from the body. When the drop block is properly adjusted, it is suddenly released and falls upon the gate, thus breaking it off from the body. Sometimes it cannot be detached at a single blow of the drop, and the operation must be repeated sometimes twice or three times. When the gate is broken off, it drops in the soft sand below.

On the day of the accident one of these double bodies had been placed as above described, for the purpose of breaking off the gate. The plaintiff's intestate, Harry McCash, was a young man working in the finishing department, marking and numbering car bodies and other iron products, at certain points where holes were to be drilled in them. He carried with him a blue print, from which he would find the places where marks were to be put. His work was in various parts of the finishing department, and at the time of the accident he was working from 25 to 30 feet away from the drop, with his back toward the car body. While so engaged, the gate, after being struck by the drop, was in some unexplained manner whirled through the air, passing over the head of another workman, who was within 15 or 20 feet from the gate, striking the deceased in the back of his head and neck, causing injuries from which he died.

Charles P. Wise, W. E. Wheeler, and David E. Keefe, for plaintiff in error.

S. A. Burgess and Robert H. Patton, for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). No reasonable theory of the cause of the accident is disclosed in the tes-

timony. No witness assumes to account for the erratic course of the heavy gate through the air for the distance of 25 feet, although it is suggested that there may have been something in the sand on which it fell which would cause it to take such an unusual and unexpected course. No one appears to have anticipated any danger. Such a thing had never happened before. The only conjecture which seems at all plausible is that, when the car body was let down on the steel block, it was allowed to come to rest with the inner end of the gate slightly extending over the block, so that, when the former was struck with the weight, it would naturally be whirled off away from the car body. This is mere surmise, however; there being no proof explaining just how this particular body was placed on the block, and no charge of negligence in this respect. At the close of all the testimony defendant moved for a directed verdict, which was denied, and defendant duly excepted.

The four counts of the declaration allege failure to provide a safe working place, omission to warn the deceased of the danger, failure to inclose the working place with a railing or fence, and negligently allowing the weight to drop on the side of the gate, instead of the center. The last count is not sustained by the evidence, and the third, relating to the railing, was withdrawn from the consideration of court and jury. The court submitted to the jury the question whether an ordinarily prudent person would have regarded it reasonably safe to put the deceased to work near the drop—would have anticipated the danger. As to the second count, alleging failure to warn, the court charged that if the company knew the place was dangerous, and the young man did not, and was not warned, there might be a recovery.

The motion to direct a verdict for defendant should have been granted. No one could reasonably anticipate such an unexpected and extraordinary event. No such thing had ever happened before, in the course of many years. It is not possible even now to arrive at more than a guess as to why the thing happened. If there is no way now, with the testimony of nine witnesses before us, men who have worked at the same business for years, to tell why or how the accident occurred, how can it be said that the company, in the exercise of reasonable and ordinary care, should have anticipated any danger? It must either have known there was danger, or by reasonable diligence could have known it. Parrott v. Wells, 15 Wall. 524, 21 L. Ed. 211; Washington, etc., Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; St. Louis, K. & C. R. Co. v. Conway, 156 Fed. 234, 86 C. C. A. 1; Chicago, etc., Co. v. Elliott, 55 Fed. 949, 5 C. C. A. 347, 20 L. R. A. 582. Neither of these requisites is shown by the evidence to have existed. They are not even suggested by it. On the other hand, all the evidence, and all reasonable inference from it, show plainly an utter lack of any ground, reasonable or speculative, of anticipated danger.

The judgment is reversed, with direction to grant a new trial. Reversed.